Case No. 20-7008

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
_____

United States of America,

Plaintiff-Appellee,

v.

Henri Piette,

Defendant-Appellant.

## SECOND CORRECTED OPENING BRIEF
(Oral Argument Requested)

On Appeal from the United States District Court for the
Eastern District of Oklahoma
Case No. 6:17-cr-00079-RAW
The Honorable Ronald A. White

Alan S. Mouritsen
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
ecf@parsonsbehle.com
amouritsen@parsonsbehle.com
*Counsel for Defendant-Appellant*

November 26, 2020

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STATEMENT OF THE ISSUES ................................................................ 6

STATUTORY PROVISIONS .................................................................... 7

STATEMENT OF THE CASE ................................................................... 7

I.    STATUTORY BACKGROUND ........................................................ 7

    A.    Charged offenses .................................................................. 7

    B.    Statute of limitations ........................................................... 8

II.   RELEVANT FACTUAL BACKGROUND ........................................ 9

III.  PROCEDURAL BACKGROUND .................................................. 12

    A.    Pretrial motions and resolution .......................................... 12

    B.    Evidence, themes, and defenses at trial .............................. 16

    C.    Jury instructions and verdict .............................................. 23

    D.    The district court holds that Piette should represent
        himself, but delays implementing that holding until
        after sentencing ................................................................. 23

STANDARD OF REVIEW ...................................................................... 24

SUMMARY OF ARGUMENT ................................................................. 25

ARGUMENT ....................................................................................... 28

I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
    ADMITTING THE MOLESTATION EVIDENCE. ........................ 28

    A.    The molestation evidence is not *res gestae—i.e.*,
        inextricably intertwined with the charged offenses. ............ 29

B.    The molestation evidence was not admissible under Rule 404(b). ........................................................... 31

C.    The unfair prejudice associated with the molestation evidence substantially outweighed its probative value. ...... 35

D.    The erroneous admission of the molestation evidence was not harmless .................................................. 43

II.   PIETTE'S CONVICTION UNDER 18 U.S.C. § 2423(B) SHOULD BE REVERSED BECAUSE THE STATUTE OF LIMITATIONS RAN ON THAT COUNT BEFORE PIETTE WAS INDICTED IN DECEMBER 2017, AND §§ 3283 AND 3299 DO NOT APPLY RETROACTIVELY. ................................. 46

A.    Neither express language nor normal rules of construction dictate the temporal reach of §§ 3283 or 3299. ...................................................................... 48

B.    Applying §§ 3283 or 3299 to Piette's pre-enactment conduct would create an impermissible retroactive effect. .................................................................... 51

III.  PIETTE'S KIDNAPPING CONVICTION SHOULD BE REVERSED BECAUSE THE DISTRICT COURT PLAINLY ERRED WHEN IT INFORMED THE JURY THAT PIETTE WAS REQUIRED TO PROVE THAT MCGINNIS WAS NO LONGER HELD AGAINST HER WILL BEFORE JULY 28, 2016. ........................................................................ 52

A.    The district court erred, and its error was obvious. ............. 54

B.    Defendant's substantial rights were affected by the district court's plain error. ................................... 57

C.    The fairness, integrity, or public reputation of Defendant's trial was seriously affected by the district court's instructional error. ..................................... 58

IV.   THE DISTRICT COURT ERRED WHEN IT DENIED
PIETTE THE RIGHT TO REPRESENT HIMSELF AT
SENTENCING. ...............................................................................59

CONCLUSION .......................................................................................63

STATEMENT CONCERNING ORAL ARGUMENT .............................64

ADDENDUM A .......................................... Relevant Statutory Provisions

ADDENDUM B ........................................................................... Judgment

ADDENDUM C ........................................................................Indictment

ADDENDUM D ................................................. Motion-in-Limine Ruling

ADDENDUM E .......................................... Statute-of-limitations Ruling

ADDENDUM F................................................................Jury Instruction

ADDENDUM G .............................................. Part of Sentencing Hearing

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Chatwin v. United States,*
   326 U.S. 455 (1946) ....................................................................... 53

*De Niz Robles v. Lynch,*
   803 F.3d 1165 (10th Cir. 2015) .......................................................... 50

*Faretta v. California,*
   422 U.S. 806 (1976) ....................................................................... 59

*FDIC v. Canfield,*
   967 F.2d 443 (10th Cir. 1992) .......................................................... 24

*Fernandez-Vargas v. Gonzales,*
   548 U.S. 30 (2006) .................................................................. 48, 52

*Gov't of Virgin Islands v. Pinney,*
   967 F.2d 912 (3d Cir. 1992) ............................................................. 34

*Gov't of Virgin Islands v. Smith,*
   949 F.2d 677 (3d Cir. 1991) ............................................................. 58

*Grunewald v. United States,*
   353 U.S. 391 (1957) ....................................................................... 56

*In re Winship,*
   397 U.S. 358 (1970) ....................................................................... 55

*Johnson v. United States,*
   520 U.S. 461 (1997) ....................................................................... 53

*Landgraf v. USI Film Prods.,*
   511 U.S. 244 (1994) ............................................................ 48, 50, 52

*Martin v. Hadix,*
   527 U.S. 343 (1999) ....................................................................... 49

*Musacchio v. United States*,
   136 S. Ct. 709 (2016).........................................................45

*Old Chief v. United States*,
   519 U.S. 172 (1997)..........................................................36

*People v. Miller*,
   153 Cal. App. 4th 1015 (2007) ...........................................60

*Smith v. United States*,
   568 U.S. 106 (2013)..........................................................56

*State v. Hartman*,
   2020 WL 5637596 (Ohio Sept. 22, 2020) ...........................33

*Stogner v. California*,
   539 U.S. 607 (2003)..........................................................47

*United States v. Strong*,
   826 F.3d 1109 (8th Cir. 2016)...........................................41

*Thom v. Ashcroft*,
   369 F.3d 158 (2d Cir. 2004) .............................................51

*Toussie v. United States*,
   397 U.S. 112 (1970)..........................................................50

*United States v. Asher*,
   910 F.3d 854 (6th Cir. 2018)......................................43, 44

*United States v. Benally*,
   500 F.3d 1085 (10th Cir. 2007)....................35, 36, 37, 39

*United States v. Benford*,
   875 F.3d 1007 (10th Cir. 2017)..........................................59

*United States v. Bowie,*
   232 F.3d 923 (D.C. Cir. 2000) ...........................................30

*United States v. Bradshaw*,
   690 F.2d 704 (9th Cir. 1982).............................................32

*United States v. Commanche*,
  577 F.3d 1261 (10th Cir. 2009)............................................................32

*United States v. Corrigan*,
  548 F.2d 879 (10th Cir. 1977)....................................................55, 57

*United States v. DeLia*,
  906 F.3d 1212 (10th Cir. 2018)............................................................55

*United States v. Duran*,
  133 F.3d 1324 (10th Cir. 1998)................................................... passim

*United States v. Enjady*,
  134 F.3d 1427 (10th Cir. 1998)....................................................37, 39

*United States v. Estrada*,
  25 Fed. App'x 814 (10th Cir. 2002)..............................................60, 61

*United States v. Ferris*,
  807 F.2d 269 (1st Cir. 1986) ..............................................................56

*United States v. Ford*,
  613 F.3d 1263 (10th Cir. 2010)....................................................28, 29

*United States v. Fuchs*,
  218 F.3d 957 (9th Cir. 2000)...............................................................59

*United States v. Gano*,
  560 F.2d 990 (10th Cir. 1977)..............................................................34

U*nited States v. Garcia*,
  *8*54 F.2d 3404 (9th Cir. 1988................................................................34

*United States v. Gentile*,
  235 F. Supp. 3d 649 (D.N.J. 2017)..............................................50, 52

*United States v. Gorman*,
  613 F.3d 711 (7th Cir. 2010)...............................................................30

*United States v. Green*,
  617 F.3d 233 (3d Cir. 2010) ................................................................30

*United States v. Guardia,*
    135 F.3d 1326 (10th Cir. 1998)......................................... 29, 35, 36, 37

*United States v. Hansen,*
    929 F.3d 1238 (10th Cir. 2019)......................................... 25

*United States v. Hoffman,*
    626 F.3d 993 (8th Cir. 2010)............................................. 45

*United States v. Irving,*
    665 F.3d 1184 (10th Cir. 2011)......................................... 29

*United States v. Jordan,*
    485 F.3d 1214 (10th Cir. 2007)......................................... 46

*United States v. Knight,*
    659 F.3d 1285 (10th Cir. 2011)......................................... 25

*United States v. Lacy,*
    904 F.3d 889 (10th Cir. 2018)........................................... 44

*United States v. LeCompte,*
    99 F.3d 274 (8th Cir. 1996).............................................. 34

*United States v. Loya-Rodriguez,*
    672 F.3d 849 (10th Cir. 2012)........................................... 61

*United States v. Madden,*
    38 F.3d 747 (4th Cir. 1994).............................................. 33

*United States v. Martinez,*
    938 F.2d 1078 (10th Cir. 1991)......................................... 43

*United States v. Meacham,*
    115 F.3d 1488 (10th Cir. 1997)..................................... 28, 44

*United States v. Miller,*
    688 F.3d 322 (7th Cir. 2012)............................................ 37

*United States v. Miller,*
    911 F.3d 638 (1st Cir. 2018) ....................................... 48, 50

*United States v. O'Neal,*
844 F.3d 271 (D.C. Cir. 2016) ............................................................ 60

*United States v. Osborne,*
68 F.3d 94 (5th Cir. 1995) .................................................................... 7

*United States v. Pulliam,*
973 F.3d 775 (7th Cir. 2020) .............................................................. 38

*United States v. Reitmeyer,*
356 F.3d 1313 (10th Cir. 2004) ......................................................... 47

*United States v. Rogers,*
587 F.3d 816 (7th Cir. 2009) .............................................................. 42

*United States v. Sanders,*
843 F.3d 1050 (5th Cir. 2016) ....................................................... 60, 62

*United States v. Smith,*
308 F.3d 726 (7th Cir. 2002) .............................................................. 43

*United States v. Sriyuth,*
98 F.3d 739 (3d Cir. 1996) ................................................................. 32

*United States v. Sturm,*
673 F.3d 1274 (10th Cir. 2012) ......................................................... 24

*United States v. Tan,*
254 F.3d 1204 (10th Cir. 2001) ..................................................... 32, 38

*United States v. Toledo,*
985 F.2d 1462 (10th Cir. 1993) ...................................................... 7, 54

*United States v. Tucker,*
451 F.3d 1176 (10th Cir. 2006) .................................................... 59, 63

*United States v. Williamson,*
859 F.3d 843 (10th Cir. 2017) ........................................................... 61

*United States v. Wilson,*
118 F.3d 228 (4th Cir. 1997) ........................................................ 56, 57

*Weaver v. Massachusetts*,
   137 S. Ct. 1899 (2017) ................................................................. 62, 63

*Weingarten v. United States*,
   865 F.3d 48 (2d Cir. 2017) ........................................................ 49, 51

**Statutes**

18 U.S.C. § 1201 ............................................................................ 1, 7, 9

18 U.S.C. § 2243(a) ......................................................................... 8, 46

18 U.S.C. § 2423(b) ........................................................................ passim

18 U.S.C. § 3282 .................................................................................... 8

18 U.S.C. § 3299 ........................................................................... passim

**Rules**

Fed. R. Crim. P. 52(b) ......................................................................... 53

Fed. R. Evid. 403 ......................................................................... passim

Fed. R. Evid. 404 ......................................................................... passim

Fed. R. Evid. 414 ......................................................................... passim

**Other Authorities**

Christopher B. Mueller & Laird C. Kirkpatrick,
   Evidence (2003) ............................................................ 30, 35, 41, 42

The New Wigmore: A Treatise on Evidence: Evidence of Other
   Misconduct and Similar Events (2d ed. 2020 Supp.) .............. 30, 33, 35

There are no prior or related appeals.

## **<u>INTRODUCTION</u>**

In the United States District Court for the Eastern District of Oklahoma, a jury convicted Henri Piette of kidnapping, in violation of 18 U.S.C. § 1201, and of traveling with the intent of engaging in sexual relations with a juvenile, in violation of 18 U.S.C. § 2423(b) (1994) ("traveling-with-intent charge"). The government brought these charges on December 13, 2017, approximately seventeen months after Rosalynn McGinnis appeared at the American consulate in Oaxaca, Mexico, on July 28, 2016.

Born on May 14, 1984, McGinnis told authorities and later testified that Piette, her stepfather at the time, had kidnapped her on January 31, 1997, in Wagoner, Oklahoma, when McGinnis was twelve years old. According to McGinnis, Piette held her against her will over the next nineteen-plus years until she finally escaped in 2016. She testified that Piette physically and sexually abused her.

A little over three years after the alleged kidnapping, in March 2000, McGinnis gave birth to a baby boy in Mexico. Over the ensuing

years, McGinnis gave birth to eight more children, each approximately two years apart.

Piette mounted one primary defense to each charge at trial. On the traveling-with-intent charge, Piette acknowledged that he had engaged in interstate travel (the first element) and admitted via stipulation to engaging in a sexual act with McGinnis before she turned 16 (the third element). Piette argued, however, that the government could not prove the second element—that a motivating purpose behind his travel was to have sex with McGinnis. To the contrary, Piette argued, he is a nomad by nature, meaning that he traveled to travel, not to have sex.

On the kidnapping charge, Piette acknowledged that he traveled in interstate commerce with McGinnis, that he benefited from his travel with her, that his travel with her was knowing and intentional, but insisted that McGinnis was not an "unconsenting person" because she went with him voluntarily in January 1997. And even if her initial decision to go with him was not voluntary, Piette presented evidence that McGinnis was not held against her will from 1997 to 2016.

The district court sentenced Piette to life in prison on the kidnapping charge and 360 months on the traveling-with-intent charge, each sentence to run concurrently with the other.

Piette's convictions should be reversed. The district court's admission of highly inflammatory and unfairly prejudicial evidence—that Piette molested other children, both before and after engaging in sexual acts with McGinnis—made it impossible for Piette to receive a fair trial. The district court held that this evidence was admissible as res gestae (it wasn't), as other-act evidence showing plan and motive under Rule 404(b) (it wasn't), and as propensity evidence under Rule 414 (it wasn't). Regardless of which rule applies, the evidence of Piette's other alleged molestations did not satisfy Rule 403 because the unfair prejudice it brought with it far outweighed its probative value.

Recognizing the prejudicial effect of child-molestation evidence, this Court has instructed district courts to carefully and cautiously walk through the two sides of the Rule-403 coin before admitting such evidence. Ignoring that guidance, the district court offered only the conclusory statement that the probative value of this evidence was not substantially outweighed by its unfair prejudice. That statement deprives this

Court of the opportunity to conduct meaningful appellate review, so Piette's convictions should be reversed on that basis alone.

Admitting the evidence was an abuse of discretion regardless. Piette's other alleged molestations added no probative value to the government's case. There was no dispute that Piette engaged in sexual activity with McGinnis before she turned 16, so introducing evidence that Piette molested other girls, including his own daughters, added nothing. The risk of unfair prejudice, on the other hand, was unacceptably high. Piette's daughters testified to unspeakable acts, including being forced to touch Piette's penis, put their mouth on Piette's penis, having Piette's sperm in and around their mouth, and having objects inserted into their vaginas. Admitting this evidence created a needless risk that the jury would convict based on emotion instead of evidence, and the court's limiting instructions came nowhere close to fixing the problem.

In addition, the traveling-with-intent charge should have been dismissed before trial because the statute of limitations had expired more than eight years before the indictment was brought. The clock on that charge started running on May 13, 2000, the day before McGinnis turned 16. While the clock was running, two statutes were passed that extended

4

the relevant statute of limitations, but neither statute expressly stated that it applied retroactively—to conduct completed before the statutes passed. The district court should not have applied them to Piette's conduct, moreover, because to do so created an impermissible retroactive effect.

Next, the district court plainly erred when it instructed the jury that Piette bore the burden to prove that McGinnis was not held against her will before she reported to the consulate in July 2016. Once a criminal defendant raises a statute-of-limitations defense, longstanding principles of due process require the government to prove beyond a reasonable doubt that the relevant charges were filed within the limitations period. The district court's instruction to the jury contradicted these principles by telling the jury that Piette bore the burden instead. This was plain error, and because it undermined Piette's sole defense to the kidnapping charge, Piette's kidnapping conviction should be reversed.

Finally, Piette's sentence should be reserved and remanded for re-sentencing because Piette was denied his constitutional right to represent himself at the sentencing hearing.

## STATEMENT OF THE ISSUES

*First Issue*

Should Piette's convictions be overturned because his trial was overwhelmingly infected with highly inflammatory and unfairly prejudicial evidence of other child molestations?

*Second Issue*

Should Piette's conviction on the traveling-with-intent charge be reversed because the statute of limitations had already run before the government brought it?

*Third Issue*

Should Piette's conviction for kidnapping be overturned because the jury was improperly instructed that Piette bore the burden of proving that the kidnapping count was brought within the relevant limitations period?

*Fourth Issue*

Before the start of the sentencing hearing, the district court held that Piette was entitled to represent himself, but then delayed instituting that ruling until after the sentencing hearing was over. Did the district

court deny Piette his Sixth Amendment right to represent himself at sentencing?

## STATUTORY PROVISIONS

Relevant statutory provisions can be found in Addendum A.

## STATEMENT OF THE CASE

I.    **Statutory background**

A.    **Charged offenses**

18 U.S.C. § 1201[1] "federalizes the common-law crime of kidnapping in certain enumerated situations." *United States v. Toledo*, 985 F.2d 1462, 1465–66 (10th Cir. 1993). To obtain a conviction for kidnapping under § 1201, the government must prove: "(1) the transportation in interstate commerce; (2) of an unconsenting person who is; (3) held for ransom, reward, or otherwise, and (4) the acts were done knowingly and willingly." *United States v. Osborne*, 68 F.3d 94, 100 (5th Cir. 1995).

In the Violent Crime Control and Law Enforcement Act of 1994 ("1994 Act"), in turn, Congress enacted the version of § 2423(b) at issue here. That statute made it a crime for a person to "travel[] in interstate commerce . . . for the purpose of engaging in any sexual act . . . with a

---

[1] Unless otherwise denoted, all statutory sections in this brief fall within Title 18 of the United States Code.

7

person under 18 years of age." Pub. L. No. 103-322, § 160001, 108 Stat. 1796 (1994), codified at § 2423(b) (1994). The government must prove three elements to secure a conviction on this charge: (1) travel in inter-state commerce; (2) with the intent to engage in a sexual act with a per-son under eighteen years of age; and (3) the intended sexual act violates federal law. It violates federal law to engage in a sexual act "with another person" between the ages of 12 and 16 who "is at least four years younger than the person so engaging." 18 U.S.C. § 2243(a).

### B.    Statute of limitations

The general statute of limitations for non-capital federal crimes is five years. 18 U.S.C. § 3282(a).

**In 1990**, Congress enacted § 3509(k), which extended the five-year statute of limitations for crimes of child sexual abuse until the victim reached twenty-five years of age. *See* Crime Control Act of 1990, Pub. L. No. 101-647, § 225, 104 Stat. 4789 (1990) ("1990 Act"). Approximately four years later, **in 1994**, the text of the statute was recodified (without any substantive change) at § 3283. 1994 Act, § 330018.

**In 2003**, Congress made two relevant changes to the statute of lim-itations in § 3283. First, it extended the statute of limitations for offenses

8

involving child sexual abuse to the "life of the child." 2003 Protect Act,

§ 202. Second, it added kidnapping to the list of offenses governed by

§ 3283. The statute now read:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, *or kidnaping*, of a child under the age of 18 years shall preclude such prosecution *during the life of the child*.

*Id.* (emphasis added).

**In 2006**, as part of the Adam Walsh Child Protection and Safety

Act of 2006 ("2006 Adam Walsh Act"), Congress enacted what became 18

U.S.C. § 3299:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A.

Pub. L. No. 109-248, § 211, 120 Stat. 587 (2006).

## II.   Relevant factual background

The government presented the following basic account at trial.

McGinnis did not have an easy childhood. She was born on May 14, 1984. 2:181:4–5.[2] She met Piette and his family when she was nine and her family lived in Springfield, Missouri. 2:182:7–9. McGinnis testified that Piette began touching her sexually not long after the families started to interact socially. 2:189–90. The families then started travelling together, to California, to Mexico, to New Mexico, to Arizona, to "a lot of different states." 2:194:22–24. During these travels, McGinnis testified that Piette continued touching her sexually. 2:196:24–25. The families then moved into a house in Wagoner, Oklahoma. 2:201:14–19. Gayla McGinnis—McGinnis's mother—and Piette were married on April 2, 1996. 2:387:10–18.

According to McGinnis, Piette physically abused her mother, so Gayla left the home and her children. 2:223:25–224:1. One night in December 1996, some of the kids ended up at the police station, where they met up with Gayla. The children, including McGinnis, told the police that their "mother ran off and left [them]," that she "didn't take care of [them]," and "that [they] wanted to go with Piette." 2:231:17–21. At trial,

---

[2] The record on appeal is primarily made up of two volumes. For material from Volume I, counsel will use a 1:XXX format, and for material from Volume 2, counsel will use a 2:XXX format.

McGinnis testified that her mother was "tripped out most of the time, like spaced out"—*i.e.*, "disassociated." 2:263:19–22.

In January 1997, one of Piette's kids came to pick McGinnis up from school. 2:236:6–237:9. McGinnis saw him driving off and ran and "stopped him." 2:395:12–15. They went to a motel in Tulsa. 2:238:4–239:3. McGinnis testified that she went because she believed that there was a plan to reunite the entire family, including her siblings and her mother. When she arrived at the motel, however, neither her siblings nor her mother was present. Under a new name, McGinnis began attending school at Wilson Middle School in Tulsa, Oklahoma. 2:214:3–9. Piette, his children, and McGinnis ultimately moved to Mexico. 2:255:11–13. They frequently returned to the states. 2:255:17–19, 260:25–261:1.

Piette continued to engage in sexual acts with McGinnis throughout this time. McGinnis gave birth to her first child, E.P., on March 23, 2000, in Mexico, before turning 16. 2:270:16–22, 272:12–13. McGinnis had eight more children with Piette, including Ma.P, a daughter born on May 25, 2001, in Albuquerque, New Mexico, 2:277:13–18, 280:14, and A.P., a daughter born on April 14, 2005, 2:278:6–15.

11

McGinnis and some of her children testified that the next twenty-odd years were miserable. They testified that Piette forced them to beg for money, that they were constantly on the run, and that Piette ruled the family with an iron fist. McGinnis testified to horrible physical abuse. 2:266:11–17, 281:22–24. She said that she did not leave the situation, despite opportunities to do so, because Piette threatened that he would kill her, the children, or both, if she left. Eventually, in 2016, McGinnis "waited until [Piette] got drunk and passed out," "got the kids," and left. 2:343:1–6. She traveled with her children to the American consulate in Oaxaca City, arriving on July 28, 2016. 2:346:2–4.

## III.   Procedural background

On December 13, 2017, a grand jury indicted Piette on the kidnapping and traveling-with-intent charges. 1:24–25.

### A.     Pretrial motions and resolution

#### 1.     Statute of limitations

Before trial, Piette moved to dismiss the indictment on statute-of-limitations grounds. 1:95. Piette argued that the statute of limitations on the traveling-with-intent charge began to run no later than May 14, 2000, the date on which McGinnis turned 16, and that it expired nine years later, the day McGinnis turned 25. Piette acknowledged the changes to

§ 3283, as well as the enactment of § 3299, but argued that none of those provisions restarted the already running clock because they did not apply retroactively. 1:95–96. As for the kidnapping charge, Piette argued that the statute of limitations had run before December 13, 2017, because McGinnis was free to leave Piette long before July 2016. 1:95–96.

The district court denied Piette's motion. On the kidnapping count, the court held that it was a "continuing offense," meaning that the crime did not end—and the statute of limitations did not start running—"until the victim is free." 1:147. As a result, the court held, if the government proved that the general five-year statute of limitations had not run by the time kidnapping was added to § 3283, the kidnapping charge was timely. 1:148. The court reached a similar conclusion regarding § 3299, holding that the government was required to prove that the five-year statute of limitations had not expired as of July 27, 2006, the date on which § 3299 was enacted. 1:149. As for the traveling-with-intent charge, the court held that it was not time-barred under §§ 3283 and 3299 because both statutes revived § 3283's unexpired clock. 1:151.

## 2.    Motion in limine regarding molestation evidence

A few months before trial, the government provided notice of its intent to admit evidence at trial that Piette committed other acts of child molestation. 1:100. This evidence, described in greater detail below, painted a graphic picture of Piette's sexual abuse of two of his biological daughters, as well as abuse of a young black girl years before meeting McGinnis. (We will refer to this evidence collectively as the "molestation evidence"). This evidence should be admitted, the government argued, under any one of three different theories.

First, the evidence was "res gestae"—meaning that it "was inextricably intertwined with the charged offense." 1:111. Second, the molestation evidence was admissible as other-act evidence under Rule 404(b) to show Piette's motive. 1:114. "Simply put," the government argued, Piette "was motivated to have children he could have sex with." 1:115. Third, the government argued that the sex-abuse evidence was admissible under Rule 414 because it demonstrated that Piette "craved sexually abusing children." 1:105.

At the pretrial hearing, defense counsel argued that evidence of the alleged child molestations should not be admitted as *res gestae* because

they were not "contemporaneous" with the charged offenses and were not "part of the offense." 2:33:1–3. As for Rules 404(b) and Rule 414, counsel argued that the evidence should not be admitted in "light of [the] stipulation" that there was "sexual activity" between Piette and McGinnis "while she was a minor." 2:34:23–35:2. As a result, Piette's other alleged "sexual acts" really did not "matter for the proof of sexual activity." 2:35:1–3.

The court held that the evidence was admissible. 1:321. The evidence comes in, the district court held, because "it is part of the res gestae" and "it goes to the issue of consent." 2:41:10–18. The court further concluded that the evidence was admissible under Rule 404(b) because it goes "to the issues of both motive and plan." 2:41:19–22. Finally, the court held that the other-act evidence was admissible "propensity evidence" under Rule 414. 2:42:2–4.

The Court recognized that it "still ha[d] to do a balancing test under 403." 2:42:7. "I believe," the court stated, "that the probative value of the evidence is certainly not substantially outweighed by the prejudicial effect. So that adds to my denial of the motion in limine." 2:42:8–10. "It is clear," the court went on, "that the government's theory of the case is

15

plausible. It's for the jury to decide whether it's persuasive. But it's certainly plausible. And so, under 403, we don't have a reason to keep it out." 2:42:11–14. The court memorialized its ruling in a written order but said nothing more about Rule 403. 1:321–22.

## B.    Evidence, themes, and defenses at trial

### 1.    Piette defends against the kidnapping charge by introducing evidence that McGinnis went with Piette voluntarily, and that, in any event, she was free to leave long before July 2016.

Piette's defense to the government's kidnapping charge focused on McGinnis's voluntary decision to go with Piette from the beginning and, in the alternative, that she was not held against her will thereafter. The first part of Piette's defense focused on the inability or unwillingness of McGinnis's mother, Gayla, to care for her children. According to McGinnis, Gayla had "issues" in that she was "tripped out most of the time," "spaced out," and "disassociated." 2:263:14–22. Because of her "issues," Gayla "didn't take care of" her children, including McGinnis, who testified that, as of December 1996, she "want[ed] to go with Piette." 2:231:17–18. In January 1997, less than two weeks before the alleged kidnapping, McGinnis asked a social worker "if she had to go with her mother." Def. Ex. 2, at 1108; 2:959:19–20. And on the day of the alleged kidnapping,

McGinnis acknowledged that she "ran out the door" of the school to catch the departing vehicle because she "felt like [she] was going to be left behind." 2:236:1–3. All of this, defense counsel argued, showed that McGinnis voluntarily went with Piette from the beginning.

Even if McGinnis's initial decision to go with Piette was involuntary, the evidence shows that she was free to leave him long before July 2016. As an initial matter, McGinnis often traveled alone or just with her children. She was with some of her children, but not Piette, for example, when she was detained by immigration officials in Nogales, Arizona. 2:293:13–23. While detained, Child Protective Services interviewed the children and McGinnis, but reported no signs of abuse. 2:957:24–958:1. Piette was "[a]t least six hours" away at the time. 2:957:12–16.

In addition, McGinnis often bailed Piette out of jail. He was incarcerated in New Mexico and in Texas, for example, and on both occasions McGinnis "help[ed] get him out of jail." 2:296:2–8. She bailed Piette out when he was incarcerated in Durant, Texas, even though she had all five kids, money, and a vehicle. 2:410:6–411:12. She bailed him out of jail in Sherman, Texas, approximately three hours from Wagoner, Oklahoma, under the same circumstances. 2:1063:14–17. On one occasion, she called

17

a man named Allen Roundy to "ask for money to bail [Piette] out of jail in the United States." 2:1024:10–12. On top of these opportunities to leave, Piette taught McGinnis how to box and street fight even though he often "passed out" as a result of his drinking. 2:161:20–22, 156:15–19.

According to Dr. Rene Piette, Piette's father, McGinnis, Piette, and their children visited Dr. Piette, in Seattle, Washington, in May 2008. 2:985:11–15. Dr. Piette testified that "they looked like a very happy family." 2:985:17. McGinnis "was very pleasant and she seemed very happy." 2:985:19. Dr. Piette further testified that, during that visit, he saw McGinnis carrying what appeared to be a small handgun. 2:986:3–5.

This evidence, Piette argued, showed that McGinnis was free to leave long before July 2016.

> ### 2. Piette introduces evidence and argues that his interstate travel was not undertaken with the motivating purpose of engaging in sexual relations with a minor.

On the traveling-with-intent charge, defense counsel introduced evidence that Piette, long before he met McGinnis, was constantly traveling between states. 2:1009–14. He did so, the defense argued, because it was part of his nature and part of his lifestyle. But what the government had not proven, counsel argued, was that Piette had traveled with any kind

18

of "motivating purpose." 2:1056:1–12. And although sex with a minor might be a crime in Oklahoma, there was no "federal jurisdiction" because Defendant had not traveled with any purpose, let alone with the intent to engage in sex with a minor. 2:1057:10–13.

### 3. The district court admits evidence of Piette's other alleged acts of child molestation.

Several pieces of evidence established that Piette had sex with McGinnis while she was a minor. First, Piette stipulated that he was the biological father of E.P., McGinnis's first child, who was born on March 23, 2000, when McGinnis was 15 years old. 2:915:22–25. Second, McGinnis testified at length about the sexual acts Piette performed on her while she was still a minor. 2:187–208. Defense counsel did not challenge McGinnis's account of this abuse on cross-examination. 2:362–434. Third, the court admitted a recording of Piette's oral statements to an investigator that he had engaged in sexual activities with McGinnis while she was still a minor. Gov't Ex. 19; 2:901:2–7.

Even though the evidence of Piette's sexual activities with McGinnis was overwhelming and undisputed, the district court allowed the government to introduce the molestation evidence. Over the course of sixty-plus pages of transcript and over defense counsel's repeated objections,

two of Piette's biological daughters provided sordid details of the abuse they allegedly suffered.

Before Ma.P. testified about the sexual abuse, the court declined to offer a "limiting instruction," reasoning that the abuse was *res gestae* of the charged offense. 2:576:22–577:3. Ma.P. then recounted that, from a very young age, Piette would touch her vagina with his hand. 2:580:15–18. She testified that Piette would put "his mouth" on "her chest" and on her "vagina." 2:582:1–9. She said that when she was very young—seven or eight years old—Piette would put "hot dogs" or "drumsticks" in her vagina because his penis wouldn't fit. 2:582:11–18. To punish her, he would put chili juice on his hands and put his fingers in her vagina to make it "burn[]." 2:583:10–16.

Ma.P. said that Piette made her touch "[h]is penis and his balls" with her "hands" and her "mouth." 2:583:17–23. When she did that, she testified, his "sperm" would go in her "mouth." 2:584:7–16. She testified that the defendant made her dance naked for him and that he gave her "alcohol" and "drugs." 2:585:5–19. As she got older, Ma.P. testified, the abuse became "an everyday thing." 2:586:1–3. Ma.P. then said that she woke up one night to see Piette with his hands on A.P.'s crotch and "A.P.

20

crying." 2:590:8–11. That episode, she testified, ended with Piette forcing Ma.P. "down on [her] knees" and putting her mouth on his penis. 2:590:21–22.

The government also introduced evidence, again over counsel's objection, "of the specifics of" Piette's alleged "touching" of another of his daughters, A.P. 2:613:6–10. According to A.P., Piette would touch A.P.'s "vagina" with his hand. 2:614:11–22. A.P. testified that Piette would have her "jack him off," at which point "sperm" would "come out of his penis." 2:615:1–25. A.P. said that Piette made her put her mouth on his penis, that he ejaculated, and that his sperm went "around" her mouth. 2:616:6–21. A.P. also recalled that she saw Piette "eating out" or "licking out" Ma.P. on the washing machine. 2:618:11–22.

McGinnis said that she "didn't know [her kids] were being molested." 2:424:16. Ma.P. agreed, testifying that she never told her mother about the abuse she suffered. 2:601:13–15; 604:14–24.

The government then sought to introduce evidence that Piette had molested another child before meeting McGinnis. When it did so, defense counsel objected that the government was "just adding on at this point," and that additional molestation evidence would make it "impossible . . .

to get a fair determination from the jury." 2:639:10–14. The court reaffirmed its holding that the evidence could come in, however, holding that this additional molestation evidence was being "introduced for a proper purpose," that it was "relevant," and that "its prejudicial value [wa]s not substantially outweighed by its relevance." 2:640:3–6. The court believed that its prior recitation of the "limiting instruction" had "cure[d] any problems." 2:640:4–10. With the court's blessing, one of Piette's children testified that he walked in on Piette touching the "vagina" of a "little [eight-year-old] black girl he brought over." 2:640:20–25; 641:22–24. Piette told his child that he had "a problem." 2:643:17–19.

The government emphasized the molestation evidence in closing argument. "A six- or seven- or eight-year-old girl," the government argued, "should never feel like she is the one who has to let her own father put his penis in her mouth and ejaculate in her mouth because she has to protect her sibling." 2:1042:4–8. You should consider the evidence of sexual abuse, the government argued, "when you are considering this defendant's plan and this defendant's motive." 2:1050:4–9.

### C.    Jury instructions and verdict

In one of the jury instructions, the jury was informed that the "government has the burden of proving the defendant guilty beyond a reasonable doubt." 1:360. According to a different court-proffered jury instruction, however, entitled "Duration of Kidnapping," the jury was instructed that one of Piette's *defenses* was that, if McGinnis was ever held against her will, it ended "at a date earlier than July 28, 2016." 1:372. "Defendant *must prove this contention*," the jury was told, "by a preponderance of the evidence, which is defined as 'more likely than not.'" 1:372 (emphasis added). On the special verdict form, the jury was asked whether it found, "by a preponderance of the evidence, that McGinnis was no longer held against her will on a date earlier than July 28, 2016?" 1:388. It answered "No." 1:388. The jury found Piette guilty on both counts. 1:388–89.

### D.    The district court holds that Piette should represent himself, but delays implementing that holding until after sentencing.

About three months before the sentencing hearing, Piette wrote to the court that he wanted his trial counsel "to withdraw from the case." 2:1106:21–22; 1:399. He repeated that request at the beginning of the sentencing proceedings. 2:1107:1–2. The court did not engage with Piette to ensure that his waiver of the right to counsel was knowing and

voluntary, but instead agreed to "grant the Motion to Withdraw to be in effect subsequent to this sentencing hearing." 2:1108:10–12.

As Piette asked for clarification at the hearing, the court interrupted him to tell him that he could only communicate with the court through his attorney. 2:1108:20–21. At that point there was an off-the-record discussion, after which defense counsel stated that they were "ready to go on." 2:1108:24. The court asked Piette if "that" was "acceptable," to which Piette responded, "Yes, sir, yes." 2:1108:25–1109:2. During the sentencing hearing, defense counsel said to Piette: "You really don't want me to say how much I know because it may hurt your appeal later." 2:1136:5–6.

The court sentenced Piette to life in prison on the kidnapping count and 360 months in prison on the traveling-with-intent count, with the two terms to be served concurrently. 1:419; 1:1147:1–9.

This appeal followed.

## **STANDARD OF REVIEW**

The district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Sturm*, 673 F.3d 1274, 1285 (10th Cir. 2012).

The district court's interpretation of §§ 3283 and 3299 is reviewed de novo. *See FDIC v. Canfield*, 967 F.2d 443, 445 (10th Cir. 1992).

The district court's improper jury instruction is reviewed for plain error because defense counsel did not object to it. *United States v. Knight*, 659 F.3d 1285, 1287 (10th Cir. 2011).

Whether the district court denied Piette his constitutional right to counsel at the sentencing hearing is reviewed de novo. *See United States v. Hansen*, 929 F.3d 1238, 1248 (10th Cir. 2019).

## SUMMARY OF ARGUMENT

Piette's convictions should be reversed for at least three reasons. *First*, Piette's trial was infected by repulsive other-act molestation evidence that created an unacceptable risk that the jury would convict based on emotion instead of dispassionate decision-making. The court held that the evidence was *res gestae*—inextricably intertwined with the charged offenses. It wasn't. It had nothing to do with whether McGinnis was kidnapped, for how long she was kidnapped, or whether Piette traveled interstate with the intent of engaging in an unlawful sexual act with McGinnis. The court held that the evidence served two purposes under Rule 404(b)—motive and plan. It didn't. Under these circumstances,

neither purported purpose was distinguishable from the propensity-based reasoning Rule 404(b) forbids. Without meaningfully addressing Rule 403, the court then held that the evidence could be admitted under Rule 414. It couldn't. Had the district court offered anything beyond a conclusory Rule-403 analysis, it would have recognized that the molestation evidence added nothing in terms of probative value to the government's case, while at the same time creating an extremely high risk that the jury would convict Piette, not for committing the charged offenses, but for engaging in unspeakably vile acts with his own children. Because the admission of this evidence was not harmless, Piette's convictions should be reversed.

Second, Piette's traveling-with-intent conviction should be reversed because the statute of limitations expired before the government brought charges in December 2017. To be sure, a 2003 amendment to § 3283 and the 2006 enactment of § 3299 purported to extend the relevant statute of limitations after the clock had already started. But nothing in the express language or context of either statute indicates that Congress intended it to apply retroactively. These statutes should not be so applied, moreover, because to do so would create an impermissible retroactive effect.

26

Third, Piette's kidnapping conviction should be reversed. The primary issue on the kidnapping offense was whether McGinnis voluntarily went with Piette to begin with, and if not, whether she was free to leave Piette long before she appeared at the consulate in July 2016. Piette raised this statute-of-limitations defense before trial and at trial. When a criminal defendant raises a statute-of-limitations defense, longstanding law requires the government to overcome that defense beyond a reasonable doubt. The district court instructed the jury, however, that *Piette* bore the burden to prove by a preponderance of the evidence that the government's kidnapping charge was brought outside the limitations period. This was plain error that warrants reversal. It misled the jury on the central issue at trial and it undermined Piette's primary—if not only—defense to the kidnapping charge.

Piette's sentence should be reversed because he was denied the right to represent himself. Well before the sentencing hearing, Piette asked the district court to terminate the services of his counsel, and his counsel agreed to withdraw. Rather than explore with Piette whether his waiver of the right to counsel was knowing and voluntary, the district court simply announced that it would allow Piette to represent himself

after the sentencing hearing was over. This was an outright denial of Piette's constitutional right to represent himself at sentencing, and Piette's sentence should therefore be reversed and remanded.

## ARGUMENT

### I.    The district court abused its discretion in admitting the molestation evidence.

The molestation evidence should not have been admitted at trial, and the district court abused its discretion in ruling otherwise. The first indication that the district court abused its discretion is that it never settled on the precise rationale behind the admission of this evidence. *See United States v. Meacham*, 115 F.3d 1488, 1491 (10th Cir. 1997). In its order, the court held that the evidence was admissible as *res gestae*, under Rule 404(b), and under Rule 414. 1:321–22.

But when it comes to molestation evidence, these are very different theories with very different underpinnings. If the evidence is *res gestae* or intrinsic, for example, Rules 404(b) and 414 do not apply—the only barrier to admission is "Rule 403's balancing test." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010). If the evidence is extrinsic and introduced for a non-character, non-propensity purpose, meanwhile, Rule 404(b) governs its admission and Rule 414 does not apply. *Mecham*, 115

F.3d at 1494. And if the evidence is introduced to show that the defendant has a propensity to molest children and that he acted in conformance with that propensity, Rule 404(b) does not apply but Rule 414 does. *United States v. Guardia*, 135 F.3d 1326, 1329 (10th Cir. 1998). At no point did the government or the court specify the grounds on which the molestation evidence was admissible. Worse still, the molestation evidence was not admissible under any of these theories.

## A.    The molestation evidence is not *res gestae—i.e.*, inextricably intertwined with the charged offenses.

The molestation evidence is not *res gestae* of the charged offenses. In using the term *res gestae* (Latin for "things done"), the district court presumably meant that Piette's acts of alleged child molestation were "inextricably intertwined" with the charged offenses because they were "part and parcel of the proof" of those offenses. *Ford*, 613 F.3d at 1267. The supposed advantage of categorizing evidence as *res gestae* is that it eliminates the need to run it through the Rule-404(b) filter. Some have characterized this "advantage" as "illusory," however, because even intrinsic evidence "will be inadmissible under Rule 403 if it has no proper probative value." *United States v. Irving*, 665 F.3d 1184, 1215 (10th Cir. 2011) (Hartz, J., concurring). What's more, "the distinction between

29

intrinsic and extrinsic evidence is unclear and confusing, and can lead to substituting conclusions for analysis."[3] *Id.*; *see* David P. Leonard, The New Wigmore: A Treatise on Evidence: Evidence of Other Misconduct and Similar Events § 5.2 (2d ed. 2020 Supp.) ("The New Wigmore") (noting that reliance on the *res gestae* doctrine "breeds admission of evidence without analysis, discouraging the court from examining the evidence for its potential value and dangers").

Here, the district court "substituted conclusions for analysis." The court simply declared that the other alleged acts of child molestation were *res gestae* without explaining its reasoning. Either way, the court erred. Evidence is not *res gestae* or intrinsic unless "it is hard or impossible to prove [the charged offenses] without proving or at least exposing the other [acts]." Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 4.15, p. 195 (2003) ("Mueller & Kirkpatrick"). It was neither hard

---

3 For these reasons and others, several courts have sharply criticized the "inextricably intertwined" test or done away with it altogether. *See United States v. Gorman,* 613 F.3d 711, 719 (7th Cir. 2010) (abandoning inextricable-intertwinement test because it has "become overused, vague, and quite unhelpful"); *United States v. Green,* 617 F.3d 233, 248 (3d Cir. 2010) ("the inextricably intertwined test is vague, overbroad, and prone to abuse"); *United States v. Bowie,* 232 F.3d 923, 927 (D.C. Cir. 2000).

nor impossible for the government to prove the charged offenses without introducing the molestation evidence.

The government has never argued that the molestation evidence directly proved the traveling-with-intent charge, leaving only the kidnapping charge. Piette's alleged molestation of his daughters is inextricably intertwined with the kidnapping of McGinnis, the government argued below, because that evidence goes "directly to the elements of the crime." 1:112. How so? The government never quite articulated the relationship between molestation of the daughters and McGinnis's consent, but more importantly, McGinnis herself testified that she "didn't know [her kids] were being molested." 2:424:16. And Ma.P. testified that she never told her mother about the alleged abuse and denied it when asked about it. 2:601:13–15; 604:8–11. That McGinnis did not know about the alleged molestation means that it could not have affected her ability to consent. The molestation evidence was not *res gestae*.

## B. The molestation evidence was not admissible under Rule 404(b).

The molestation evidence was also not admissible under Rule 404(b). Rule 404(b) "carves out an exception to the general proposition that relevant evidence is admissible, precluding the use of other bad acts

31

to prove character and demonstrate action in conformity therewith." *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009). If uncharged misconduct "tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b)" and may be admitted if it also satisfies Rule 403. *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001).

Here, the district court concluded that the molestation evidence was relevant to two non-propensity purposes: "motive for the crime" and "plan." 2:41:19–20. The evidence served neither purpose. As for motive, the connection between the molestation evidence and Piette's alleged motive in committing the charged offenses is speculative at best. To be sure, evidence of Piette's "sexual relations" *with McGinnis* is relevant to his motive for allegedly kidnapping McGinnis. *See United States v. Sriyuth*, 98 F.3d 739, 747 (3d Cir. 1996) (quoting *United States v. Bradshaw*, 690 F.2d 704, 708–09 (9th Cir. 1982)). And that evidence was admitted.

But the direct relationship between kidnapping a young girl and having sexual relations with that girl is a far cry from the "motive" the government advances here—that Piette kidnapped McGinnis because "he was motivated to have children he could have sex with." 1:115;

2:38:1–2. Indeed, the government offered nothing beyond the molestation evidence itself to support this outlandish theory. The New Wigmore § 8.4.2 ("Courts have . . . required that evidence of the motive be more than speculative."); *cf. United States v. Madden*, 38 F.3d 747, 753 (4th Cir. 1994) ("While inferential leaps are the heart of indirect evidence, some chasms are simply too wide to bridge.").

At bottom, the only thing the government offered to support the inference that Piette kidnapped McGinnis so that he could molest the daughters she birthed was the premise that Piette "craved sexually abusing children." 1:105. But that's nothing more than the forbidden character-based propensity inference repackaged as evidence of motive. The New Wigmore § 8.3. It's also circular. The molestation evidence proves that Piette has a propensity to sexually abuse children, which is his motive for kidnapping McGinnis, which is what makes the molestation evidence admissible. None of this is a permissible application of Rule 404(b). *See State v. Hartman*, 2020 WL 5637596, at *9 (Ohio Sept. 22, 2020); The New Wigmore § 8.3 ("The more difficult it is to distinguish motive and character, the greater the danger of jury misuse, and the more cautious the trial judge must be in deciding on admission or exclusion.").

The notion that the molestation evidence was admitted for the purpose of showing Piette's "plan" is also a non-starter. In some cases, other-act evidence shows "the planning of or preparation for the charged offense." *United States v. LeCompte*, 99 F.3d 274, 277 (8th Cir. 1996). In other cases, other-act evidence "tend[s] to prove that defendant employed a 'common scheme' to commit a series of similar crimes." *Id.* at 278; *see United States v. Gano*, 560 F.2d 990, 993 (10th Cir. 1977). When there is not a "specific linkage" between similar crimes because the "victims [a]re different and the events are far apart in time," however, other-act evidence is relevant to plan or preparation "only insofar as it tends to prove a propensity to commit crimes, which Rule 404(b) prohibits." *LeCompte*, 99 F.3d at 278.

So too here. Neither the government nor the district court has ever "articulated any theory that unites" the molestation evidence with the charged offenses "without resorting to the kind of character-based inference prohibited by Rule 404(b)." *Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992). Nor is there anything in the government's evidence to suggest that molesting his daughters was part of "an

overarching design or purpose on the part" of Piette in kidnapping McGinnis. Mueller & Kirkpatrick § 4.17, p. 208; *see* The New Wigmore § 9.2.2.

In sum, there was no non-propensity purpose behind the admission of the molestation evidence, so Rule 404(b) does not apply. And even if there was such a purpose, as shown below, the evidence would still not be admissible because its unfair prejudice far outweighs its probative value under Rule 403.

### C. The unfair prejudice associated with the molestation evidence substantially outweighed its probative value.

That leaves only Rule 414 as a basis for the admission of the molestation evidence, but it doesn't fit either. As explained above, Rule 404 generally "prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007). Rule 414 is an exception to Rule 404, meaning that Rule 414 allows the government, in the context of sex offenses, to introduce evidence "of a defendant's prior conduct for the purpose of demonstrating a defendant's propensity to commit the charged offense." *United States v. Guardia*, 135 F.3d 1326, 1329 (10th Cir. 1998).

In analyzing whether molestation evidence may be admitted under Rule 414, a district court's first task is to ensure that "(1) the defendant is accused of a crime involving sexual assault or child molestation, (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant." *Benally*, 500 F.3d at 1090. But even if the proffered evidence satisfies these "three threshold requirements," its admissibility is still "subject to the Rule 403 balancing test." *Id*. And it's at that stage of the analysis that the district court's error becomes clear.

1.  **Piette's conviction should be reversed because the district court failed to conduct the Rule-403 analysis called for in this Court's cases.**

As an initial matter, this Court has long recognized that molestation evidence admitted under Rule 414, even if probative, creates a risk that "a jury will convict for crimes other than those charged—or that uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Guardia*, 135 F.3d at 1330–31 (quoting *Old Chief v. United States*, 519 U.S. 172, 181 (1997)). "This is so because even if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—

that is, an improper basis." *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012).

To protect against that risk, and in light of the "sensitive nature of the balancing test in these cases," it is "particularly important for a district court to fully evaluate the proffered Rule 413 [or 414] evidence and make a clear record of the reasoning behind its findings." *Id.* at 1331; *see Benally*, 500 F.3d at 1091. The district court's comprehensive analysis should involve consideration of seven different factors. On the probative-value side, the court should assess

> (1) how clearly the prior act has been proved; (2) how probative the evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself of any less prejudicial evidence.

*Benally*, 500 F.3d at 1090 (quoting *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)). On the unfair-prejudice side,

> the court is also expected to take into account (1) how likely it is such evidence will contribute to an improperly-based jury verdict; (2) the extent to which such evidence will distract the jury from the central issues of the trial; and (3) how time consuming it will be to prove the prior conduct.

*Id.*

37

The district court did none of this. Faced with graphic, disturbing, and interracial accounts of child molestation that occurred years before and after the charged offenses, the district court simply declared "that the probative value of the evidence is certainly not substantially outweighed by the prejudicial effect." 2:42:8–10. In its follow-up written ruling, moreover, the court did not even mention Rule 403. 1:321–22. The district court's barebones Rule-403 analysis of the proffered molestation evidence is an abuse of discretion warranting reversal. *See United States v. Tan*, 254 F.3d at 1211 (reversing and remanding to allow the district court to "conduct a new Rule 403 balancing test" because it had not "explain[ed] its reasoning in sufficient detail to permit informed appellate review"); *United States v. Pulliam*, 973 F.3d 775, 786 (7th Cir. 2020).

### 2.  The molestation evidence added very little to the government's case.

If the district court had conducted the required Rule-403 analysis, it would have recognized that the unfair prejudice associated with the molestation evidence far outweighed its probative value. Start with probative value. To carry its burden, the government had to establish a grand total of seven elements, four on the kidnapping charge (transportation, unconsenting person, reward, and mens rea) and three on the

traveling-with-intent charge (interstate travel, intent to engage in sexual relations with a minor, and intending to perform a sexual act that violates federal law). The government sought to establish that Piette engaged in sexual activity with McGinnis to satisfy the "unconsenting person" and "reward" elements of the kidnapping charge, as well as the unlawful-sexual-act element of the traveling-with-intent charge.

Had Piette denied engaging in sexual activity with McGinnis while she was a minor, the probative value of Piette's propensity to molest underage girls is easier to understand. And indeed, this Court has affirmed the admission of molestation evidence under Rule 414 when the question of "whether the alleged assault [or molestation]" occurred is "hotly disputed," *Bennaly*, 500 F.3d at 1092, or turns on "credibility determinations," *Enjady*, 134 F.3d at 1431.

But here, there was no dispute. McGinnis testified at length about the sexual acts Piette performed on her while she was still a minor, *e.g.*, 2:187–208, and defense counsel did not challenge McGinnis's account of this abuse on cross-examination, 2:362–434. The jury also heard Piette himself admitting to engaging in sexual activities with McGinnis while she was underage. Gov't Ex. 19; 2:901:2–7. What's more, Piette

39

unequivocally stipulated that he was the biological father of E.P., McGinnis's first child, born on March 23, 2000, when McGinnis was 15 years old, eliminating all doubt as to whether he had sex with McGinnis before she turned 16. 2:915:22–25. Given this overwhelming evidence, even the government had to acknowledge in its closing statement that "there [wa]s literally no dispute" that Piette engaged in unlawful sexual acts with McGinnis. 2:1051:12–14.

Given that Piette's unlawful sexual acts with McGinnis were "literally" undisputed, the molestation evidence added almost nothing to the government's case. It did not affect the question of McGinnis's consent because, by her own admission, she was not aware that it was happening. And it added nothing in terms of establishing the purpose behind Piette's interstate travel because Piette mounted a jurisdictional defense—an effort to sever his interstate travel from his sexual activity with McGinnis. The molestation evidence did nothing to overcome this defense because it did not connect Piette's travel to his alleged propensity to molest underage girls.

### 3.   The molestation evidence created an unacceptable risk that the jury would convict based on passion and prejudice instead of the evidence.

By comparison, the molestation evidence was highly inflammatory and unfairly prejudicial. Given the minimal probative value of the molestation evidence, there is a strong argument that it would have violated Rule 403 to admit the molestation evidence even if it was described in the driest possible way—*i.e.*, "my father molested me." But the detailed, graphic, and horrifying descriptions of the alleged molestations remove all doubt that the evidence violated Rule 403. *See United States v. Strong*, 826 F.3d 1109, 1118 (8th Cir. 2016) (Kelly, J., dissenting) (the evidence should have been excluded because "the government did not limit the evidence to a straightforward recitation of the fact and circumstances of the prior sexual assault," but instead "described the assault and its aftermath in graphic detail").

There are few things that incite the anger of the average juror more than the sexual abuse of underage girls, and rightly so. Because the average juror considers such conduct to be "shocking, heinous, or morally repugnant," the "risk of unfair prejudice" is "most acute" in such cases. Mueller & Kirkpatrick § 4.16, p. 201. Thus, even though Rule 414 allows

molestation evidence to prove a defendant's propensity to engage in such conduct, it still poses significant dangers against which the district court must diligently guard. *United States v. Rogers*, 587 F.3d 816, 822 (7th Cir. 2009).

It is simply not plausible to suggest that the jurors were not overcome with anger as a result of the molestation evidence the government introduced. They heard Piette's daughters recount horrific and vile actions on the part of Piette, actions that would cause anyone to recoil in horror. They heard that Piette ejaculated into the mouths of his prepubescent biological daughters; stuck hot dogs and drumsticks in their vaginas because his penis wouldn't fit; and occasionally inserted his chili-soaked fingers into his daughter's vagina as punishment. Making matters worse, the jury heard evidence that the defendant was seen touching "the vagina" of a young black girl many years earlier. 2:640:20–25; 641:22–24. This evidence did not directly satisfy the elements of any offense with which Piette was charged, but it is unquestionably the kind of evidence that would force the jury to ignore their "doubts" or to "become careless in appraising other evidence that is more important on the question of guilt or innocence." Mueller & Kirkpatrick § 4.16, p. 201; *see*

42

*United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018); *United States v. Martinez*, 938 F.2d 1078, 1082 (10th Cir. 1991).

This anger was unlikely to be mollified by the district court's limiting instructions. For one thing, the court questioned in open court whether a limiting instruction was even necessary, which gave the jury every reason to ignore it. 2:112:14–17, 216:6–8. For another thing, the technical language of the court's limiting instructions was powerless in the face of the vile acts being described. *See United States v. Smith,* 308 F.3d 726, 739 (7th Cir. 2002) ("[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds.").

The conclusion is inescapable. The unfair prejudice of the molestation evidence far outweighed its probative value, and nothing in the court's limiting instructions came to the rescue.

## D.    The erroneous admission of the molestation evidence was not harmless.

The district court's erroneous admission of the molestation evidence was not harmless. The government's evidence was "strong, but not overwhelming," especially on the two elements the defense targeted—consent

on the kidnapping charge and the motivating purpose of Piette's travel on the traveling-with-intent charge. *Asher*, 910 F.3d at 863. On the kidnapping charge, discussed more fully below, defense counsel introduced significant evidence that McGinnis went with Piette voluntarily to escape her home life or, in the alternative, that she was free to leave Piette long before July 2016.

Piette's defense to the traveling-with-intent charge was technical but effective. On this count, like most federal offenses, the government was required to prove that interstate travel was a key component of the alleged crime—"that one of [Piette's] dominant purposes for traveling interstate with [McGinnis] was to sexually molest her." *Meacham*, 115 F.3d at 1496. The government had to show, in other words, not just that Piette traveled interstate with McGinnis and that he engaged in sexual acts with her while doing so, but that engaging in sexual acts with McGinnis was one of the "motivating or dominant reasons" behind his travel. *United States v. Lacy*, 904 F.3d 889, 901 (10th Cir. 2018).

To sever the connection between Piette's interstate travel and the sexual acts he performed on McGinnis, defense counsel introduced evidence that travel between states was a key part of Piette's lifestyle. In

the seven years before Piette met McGinnis, for example, he "traveled in at least 32 different states," including Arizona, New Mexico, Texas, and Montana. 2:1009–14, 1055:18–19. His travels continued after he met McGinnis. Based on this evidence, counsel argued to the jury that Piette is a "nomadic traveler"—it's "what he does. 2:1055:1–4. He did it before he met McGinnis and he did it after he met McGinnis, so there is no reason to believe that sex with McGinnis was the motivating or dominant purpose for his travel. Having sex with an underage girl "may be against the law," defense counsel explained, but it's not against "federal law" unless "you travel in interstate commerce for that purpose." 2:1056:14–16; *see United States v. Hoffman*, 626 F.3d 993, 996 (8th Cir. 2010) ("This is not a case, warned of by the Court in *Mortensen* so many years ago, and hypothesized about by Hoffman, of an immoral person merely traveling from place to place indulging in illegal or immoral acts incidentally.").

Piette's defense to the kidnapping charge required the jury to think carefully about whether McGinnis went with Piette voluntarily or whether she was free to leave long before July 2016. His defense to the traveling-with-intent charge required the jury to think carefully about the causal relationship, if any, between Piette's interstate travel and the

45

sexual acts he engaged in with McGinnis. But the graphic and inflamma-

tory nature of the molestation evidence prevented the jury from fairly

and rationally analyzing the evidence. At the very least, the improper

admission of this evidence "leave[s] one in grave doubt" as to whether it

had "a substantial influence on the outcome of the trial." *United States v.*

*Jordan*, 485 F.3d 1214, 1222 (10th Cir. 2007).

## II. Piette's conviction under 18 U.S.C. § 2423(b) should be reversed because the statute of limitations ran on that count before Piette was indicted in December 2017, and §§ 3283 and 3299 do not apply retroactively.

Piette's conviction on the traveling-with-intent charge should be

dismissed because the statute of limitations on that charge ran before

Piette was charged in December 2017. To see why, consider that McGin-

nis was born on May 14, 1984, and turned 16 on May 14, 2000. The third

element of this charge was that Piette intended to commit a "sexual act"

with McGinnis that "would have been a violation of federal law." 1:374.

The violation of federal law the government had in mind, in turn, was to

engage in a sexual act with a person who has turned 12 "but has not

attained the age of 16 years." 18 U.S.C. § 2243(a). Under the circum-

stances, therefore, May 13, 2000, was the last possible date on which Pi-

ette could have committed a crime under § 2423 because that was the last

day on which McGinnis had "not attained the age of 16 years." The statute of limitations began to run no later than that date. *See United States v. Reitmeyer*, 356 F.3d 1313, 1317 (10th Cir. 2004). Under then-existing law, the limitations period expired on the day McGinnis turned 25—May 14, 2009—more than eight years before Piette was indicted. 18 U.S.C. § 3283 (1994).

To be sure, a 2003 amendment to § 3283 and the 2006 enactment of § 3299 both extended the relevant statute of limitations on a traveling-with-intent charge under § 2423 to the length of the child's life. 1:150–51. As the district court saw it, both statutes applied to make the traveling-with-intent charge timely because they extended a limitations period that had not yet expired.[4] That conclusion, however, skips over a predicate question of critical importance: did Congress intend that the 2003 amendment to § 3283 and the 2006 enactment of § 3299 would apply retroactively? The question matters because, by the time Piette was charged, "the old statute of limitations had expired, but the new statute of limitations had not." *United States v. Miller*, 911 F.3d 638, 640 (1st

---

[4] This is not a challenge under the Ex Post Facto Clause, which is violated if a law seeks to revive a limitations period that has already expired. *Stogner v. California*, 539 U.S. 607, 610 (2003).

Cir. 2018). "Applying a statute of limitations enacted in 2003 [and 2006] to conduct that occurred from [1997 to 2000]," in other words, "requires a retrospective application of the 2003 [and 2006] statute[s]." *Id.* at 643.

Whether these statutes may be validly applied to conduct completed before their enactment depends on the three-step process outlined in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006), and *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). First, has Congress "expressly prescribed" the statute's temporal reach? *Fernandez-Vargas*, 548 U.S. at 37. Second, if not, do normal rules of statutory construction dictate the statute's "temporal reach"? *Id.* Third, if the answer to both questions is no, the next question is "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties." *Id.* Here, the answer to these three questions is no, no, yes, making the traveling-with-intent charge untimely.

## A. Neither express language nor normal rules of construction dictate the temporal reach of §§ 3283 or 3299.

Starting with the first step of the analysis, nothing in the express language of §§ 3283 or 3299 dictate the statutes' temporal reach. The 2003 version of § 3283 states:

48

> No statute of limitations that would otherwise pre-
> clude prosecution for an offense involving the sex-
> ual or physical abuse, or kidnaping, of a child un-
> der the age of 18 years shall preclude such prose-
> cution during the life of the child.

2003 Protect Act, § 202. For its part, 18 U.S.C. § 3299 reads:

> Notwithstanding any other law, an indictment
> may be found or an information instituted at any
> time without limitation for any offense under sec-
> tion 1201 involving a minor victim, and for any fel-
> ony under chapter 109A.

2006 Adam Walsh Act, § 211. As even a cursory review of this language

indicates, neither statute "purport[s] to define the temporal reach of

these substantive limitations." *Martin v. Hadix*, 527 U.S. 343, 354 (1999);

*Weingarten v. United States*, 865 F.3d 48, 55 (2d Cir. 2017) (noting "that

the 2003 version of § 3283 does not contain an unambiguous statement

from Congress that the provision applies retroactively").

Normal rules of statutory construction are no more helpful in de-

termining the statutes' temporal reach. This is partly because "normal

rules of construction" contain two presumptions against applying crimi-

nal statutes retroactively. The first is that the Supreme Court has long

made clear that criminal "statutes of limitation must be interpreted in

favor of repose." *Toussie v. United States*, 397 U.S. 112, 115 (1970). The

second is that there is a "presumption against retroactivity" in the

49

interpretation of a statute's temporal reach. *Landgraf*, 511 U.S. at 272; *De Niz Robles v. Lynch*, 803 F.3d 1165, 1169 (10th Cir. 2015). Based on these presumptions, at least one court has refused to apply a revised statute of limitations retrospectively in the absence of express language requiring that result. *See United States v. Gentile*, 235 F. Supp. 3d 649, 655 (D.N.J. 2017); *see also Miller*, 911 F.3d at 645 ("[W]hen Congress has sounded an uncertain trumpet, a court ought to refrain from applying an enlarged criminal statute of limitations retrospectively.").

But even if one applies "normal rules of construction," it becomes clear that Congress did not dictate the temporal reach of §§ 3283 and 3299. Most telling is that Congress routinely prescribes the temporal reach of new statutes of limitation in the criminal arena. In the 1990 Act, for example, Congress stated that the "amendments . . . shall apply to any offense committed before the date of the enactment of this section, if the statute of limitations applicable to that offense had not run as of such date." 1990 Act, § 2505(b). A neighboring provision passed in 2004, moreover, expressly included language calling for retrospective application. Justice for All Act of 2004, Pub. L. No. 108-405, § 204, 118 Stat 2260, 2271 (2004). The absence of any such guidance in the legislation

amending § 3283 and enacting § 3299 is compelling evidence that Congress did not intend to apply either statute retroactively. *See Thom v. Ashcroft*, 369 F.3d 158, 163 n.6 (2d Cir. 2004) (Calabresi, J., writing for himself) ("If I were judging on a clean slate, I would read [*Landgraf*]—at a minimum—to say that, where Congress has not made its intent clear, courts should presume that any civil statute that would be considered *ex post facto* in the criminal context was meant to apply prospectively only.")

## B. Applying §§ 3283 or 3299 to Piette's pre-enactment conduct would create an impermissible retroactive effect.

Third, and finally, applying §§ 3283 and 3299 to Piette's pre-enactment conduct would produce an impermissible retroactive effect. "The law on how to determine if a retroactive statutory effect is presumptively impermissible is murky." *Weingarten*, 865 F.3d at 56. Guiding this analysis, however, are "principles of affording parties fair notice, protecting reasonable reliance, and guarding settled expectations." *Id.*

At the time Piette allegedly "committed his criminal acts, he had a statutory right" that protected him "from criminal prosecution" after McGinnis's 25th birthday. *Gentile*, 235 F. Supp. 3d at 654. Thus, the difference between applying the 2003 version of § 3283 and the 2006 version of § 3299 is the difference between whether Piette could be prosecuted at

51

all. That difference is meaningful in terms of protecting Piette's expectations, duties, and liabilities. *See Fernandez-Vargas*, 548 U.S. at 37. Under the circumstances, therefore, the Court should apply the "antiretroactivity canon" and hold that §§ 3283 and 3299 do not apply to pre-enactment conduct. *Landgraf*, 511 U.S. at 278. Because Piette's prosecution for violating § 2423 was brought after McGinnis's 25th birthday, that prosecution is barred by the version of § 3283 in effect at the time that conduct occurred.

## III.   Piette's kidnapping conviction should be reversed because the district court plainly erred when it informed the jury that Piette was required to prove that McGinnis was no longer held against her will before July 28, 2016.

Piette's kidnapping conviction should be reversed because the district court improperly instructed the jury that Piette bore the burden of proving by a preponderance of the evidence that the kidnapping charge was brought *outside* the limitations period instead of instructing the jury that the government bore the burden of proving beyond a reasonable doubt that the kidnapping count was brought *within* the limitations period. 1:372. Piette did not object to this instruction, so the Court's review is for plain error.

52

Under Rule 52(b) of the Federal Rules of Criminal Procedure, four elements determine whether an appellate court may upset the judgment of a district court based on an error that was not brought to the district court's attention:

> There must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998) (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). All four elements are satisfied here.

Piette's defense to the kidnapping charge focused on consent. He contended that McGinnis went with him voluntarily, and even if her initial decision was involuntary, she was not held against her will long before she made her way to the American consulate in July 2016. *See Chatwin v. United States*, 326 U.S. 455, 464 (1946) ("[T]he involuntariness of seizure *and detention* . . . is the very essence of the crime of kidnaping."). Because McGinnis was free to leave Piette not long after she went with him, the statute of limitations began to run at that time and expired long

53

before Piette was charged with kidnapping on December 13, 2017. *See United States v. Toledo*, 985 F.2d 1462, 1465-66 (10th Cir. 1993); *United States v. Garcia*, 854 F.2d 340, 344 (9th Cir. 1988).

In a court-provided jury instruction entitled "Duration of Kidnapping," the jury was informed that the Defendant "contend[ed]" that McGinnis was "no longer held against her will," if at all, "at a date earlier than July 28, 2016." 1:372. "*Defendant*," the jury was told, "must prove this contention by a preponderance of the evidence, which is defined as 'more likely than not.'" 1:372.

## A.    The district court erred, and its error was obvious.

First, the district court committed an obvious error because to instruct the jury that Piette bore the burden of proving that McGinnis "was no longer held against her will" on a date earlier than July 28, 2016, misled the jury. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

As is the case with other defenses, it is well-settled that "a statute-of-limitations defense becomes part of a case only if the defendant puts

the defense in issue." *Musacchio v. United States*, 136 S. Ct. 709, 718 (2016). But once "a defendant presses a limitations defense, *the Government then bears the burden* of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period." *Id.* (emphasis added); *see United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018). Thus, if a defendant raises a statute-of-limitations defense, "proof that the" government brought its prosecution within the limitations period "effectively becomes an element of the crime" on which the government bears of burden of proof beyond a reasonable doubt. *Duran*, 133 F.3d at 1331; *see United States v. Corrigan*, 548 F.2d 879, 882 (10th Cir. 1977) ("[O]nce a defendant introduces evidence raising a triable issue of fact on his theory of defense, the jury should be instructed that the standard of proof beyond a reasonable doubt applies to the affirmative defense.").

Here, Piette raised his statute-of-limitations defense in a pretrial motion to dismiss. 1:95. He continued to press this defense throughout trial. As a result, it became the government's burden to prove that the kidnapping charge was instituted within the limitations period, *i.e.*, that McGinnis was not free to leave Piette's presence before July 28, 2016. But

55

instead, the court instructed the jury that *Piette* bore the burden to prove by a preponderance of the evidence that McGinnis was free to leave before July 28, 2016. This was error because it misled the jury. *See Duran*, 133 F.3d 1324, 1330 (10th Cir. 1998).

The district court's error was plain, moreover, because it was "contrary to well-settled law." *Duran*, 133 F.3d at 1331. In addition to the Supreme Court's decision in *Musacchio* and this Court's decision in *De-Lia*, several other decisions have embraced the principle "that the government bears the burden of proving that the prosecution started within the applicable statute of limitations period." *United States v. Ferris*, 807 F.2d 269, 272 (1st Cir. 1986); *United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997); *see Smith v. United States*, 568 U.S. 106, 113 (2013); *Grunewald v. United States*, 353 U.S. 391, 396 (1957).

In *Wilson*, the defendant was convicted of tax evasion and obstruction of the internal revenue laws. The limitations period on the first count began "to run on the date of the last affirmative act of tax evasion" and to run on the second count "on the date of the last corrupt act." 118 F.3d at 236. Thus, "the government had to prove that [the defendant] committed" an act of tax evasion or a corrupt act within the limitations period.

*Id.* By relieving the government of that burden and instead imposing it on Piette, the district court plainly erred. *See Corrigan*, 548 F.2d at 881 ("There are a number of cases emphasizing the importance of avoiding confusion as to the burden of proof when an affirmative defense such as entrapment, insanity, or self-defense is asserted.").

## B. Defendant's substantial rights were affected by the district court's plain error.

The district court's erroneous jury instruction affected Piette's substantial rights because it concerned a "principal element" of Piette's defense. *Duran*, 133 F.3d at 1330. As explained above, Piette's core defense to the kidnapping charge was that McGinnis voluntarily chose to go with Piette, and that even if her initial decision wasn't voluntary, she was free to leave Piette long before she traveled to the consulate. To support this contention, Piette introduced evidence that McGinnis had bailed him out of jail on several different occasions, that he taught her to box and practice martial arts, that she appeared content with her situation to onlookers, and that she did not say anything to authorities despite several opportunities to do so. That the jury was improperly instructed on Piette's primary defense to the government's kidnapping charge is compelling evidence that Piette's substantial rights were affected by the district court's

obvious error. *See Duran*, 133 F.3d at 1333; *Gov't of Virgin Islands v. Smith*, 949 F.2d 677 (3d Cir. 1991) ("The error was critical here because [the defendant's] entire case rested on his claim of self-defense" and the "conflicting evidence on the issue increased the importance of the missing jury instruction.").

### C. The fairness, integrity, or public reputation of Defendant's trial was seriously affected by the district court's instructional error.

For many of the same reasons, the fairness and integrity of Piette's trial were undermined by the district court's error. Generally, "the fairness or integrity of a defendant's trial is 'seriously affected' when the defendant has presented substantial evidence in support of an affirmative defense which has been undermined by an erroneous instruction." *Duran*, 133 F.3d at 1330. That is exactly what happened here. Had the jury been properly instructed that the government had to prove beyond a reasonable doubt that McGinnis was not free to leave, the outcome may well have been different. *Id.* at 1334 ("In light of the revered status of the beyond-a-reasonable-doubt standard in our criminal jurisprudence, a jury instruction that allows a conviction where one important element may not have been found against the defendant by such a standard cannot be

overlooked."); *United States v. Benford*, 875 F.3d 1007, 1021 (10th Cir. 2017) (reversing and remanding because "[t]he plainly erroneous jury instruction here may have allowed the jury to convict without requiring the government to prove all elements of the crime beyond a reasonable doubt."); *United States v. Fuchs*, 218 F.3d 957, 963 (9th Cir. 2000) (same).

## IV. The district court erred when it denied Piette the right to represent himself at sentencing.

Finally, even if the Court upholds Piette's conviction, it should reverse and remand for a new sentencing hearing because Piette was denied his constitutional right to represent himself at the sentencing hearing. "A criminal defendant has a constitutional and statutory right to waive counsel and represent himself." *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (citing *Faretta v. California*, 422 U.S. 806, 834–36 (1976)). This right applies at a sentencing proceeding even if the defendant has been represented at trial. *See United States v. Estrada*, 25 Fed. App'x 814, 819 (10th Cir. 2002); *United States v. O'Neal*, 844 F.3d 271, 279 (D.C. Cir. 2016).

"In order to invoke his right to self-representation, a defendant must satisfy four requirements." *Estrada*, 25 Fed. App'x at 819. First, "he must clearly and unequivocally assert his right." *Id.* Several months

before the sentencing hearing, Piette indicated that he wanted his trial

counsel "to withdraw from the case." 2:1106:21–22; 1:399. He reiterated

that request at the beginning of the sentencing proceedings. 2:1107:1–2.

Second, he must "assert his right in a timely fashion." *Estrada*, 25 Fed.

App'x at 819. Piette complied with this requirement by asking the court

to "terminate the services" of his counsel approximately three months be-

fore the sentencing hearing. 1:399; *See People v. Miller*, 153 Cal. App. 4th

1015, 1024 (2007). Third, the request cannot be made "for the purpose of

delay." *Estrada*, 25 Fed. App'x at 819. Piette's request to represent him-

self said nothing about a continuance or further delay. *See United States

v. Sanders*, 843 F.3d 1050, 1055 (5th Cir. 2016).

That leaves the fourth requirement: that a defendant "must know-

ingly and intelligently forgo the benefits of representation by counsel."

*Estrada*, 25 Fed. App'x at 819. "The tried-and-true method for determin-

ing that a waiver was knowing and intelligent is to conduct a *Faretta*

hearing: 'a thorough and comprehensive formal inquiry of the defendant

on the record to demonstrate that the defendant is aware of the nature of

the charges, the range of allowable punishments and possible defenses,

and is fully informed of the risks of proceeding pro se." *United States v.*

*Williamson*, 859 F.3d 843, 862 (10th Cir. 2017). That is why this Court has instructed district courts, upon receiving a "timely, unambiguous request" for self-representation, to conduct a *Faretta* hearing. *See United States v. Loya-Rodriguez*, 672 F.3d 849, 859 (10th Cir. 2012).

The district court did not do so here. Instead, the court agreed to "grant the Motion to Withdraw to be in effect *subsequent* to this sentencing hearing." 2:1108:10–12 (emphasis added). Piette asked for clarification but was immediately interrupted and told to communicate only through the same counsel he wanted to fire. 2:1108:20–21. At that point there was an off-the-record discussion between Piette and his counsel, after which his counsel stated that they were "ready to go on." 2:1108:24. The court then asked Piette if "that" was "acceptable," at which point Piette responded, "Yes, sir, yes." 2:1108:25–1109:2.

The district court's approach violated Piette's right to self-representation. Faced with Piette's request to represent himself at the sentencing hearing, the district court's task was to ensure that Piette's waiver of his right to counsel was knowing and voluntary. Instead, the district court essentially ignored the request, choosing instead to allow counsel to

61

continue representing Piette through the end of the sentencing hearing. This was an outright denial of Piette's right to self-representation.

The court's decision in *United States v. Sanders*, 843 F.3d 1050 (5th Cir. 2016), is illustrative. "At all times, except perhaps at the very end of sentencing, the district court required Sanders to act through Ansley." *Id.* As was the case here, "self-representation did not occur for most of the hearing." *Id.* The "good efforts of the district court cannot override what has to be labeled *Faretta* error, meaning that court failed to honor a clear request for self-representation." *Id.*

A defendant's right to self-representation is "based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017). "Because harm is irrelevant to the basis underlying the right, the Court has deemed a violation of that right structural error." *Id.* "Deprivation of the right to self-representation requires automatic reversal because the impact of 'its denial is not amenable to harmless error analysis." *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006).

Even if the error did require prejudice, there is no question Piette was prejudiced here. Piette's counsel made a five-sentence argument at sentencing, content to "stand on the motion." 2:1114:19–25. Then, while Piette was exercising his right to allocution, defense counsel interjected to say that "You [Piette] really don't want me to say how much I know because it may hurt your appeal later." 2:1136:5–6. Both actions undermined Piette's interests and negatively affected his rights at sentencing.

## CONCLUSION

For these reasons, this Court should reverse the judgment of the district court. Both of Piette's convictions should be reversed because the district court admitted highly inflammatory molestation evidence that made it impossible for the jury to render an impartial verdict.

In the alternative, the traveling-with-intent charge should be dismissed because the statute of limitations in effect at the time of the alleged crime expired in 2009, seven years before the indictment was brought, and neither the 2003 version of § 3283 nor § 3299 apply retroactively. Piette's kidnapping charge should be overturned, meanwhile, because the district court plainly erred in instructing the jury that Piette,

not the government, bore the burden of proof on his statute-of-limitations defense.

In all events, the Court should order a new sentencing hearing because Piette was denied his constitutional right to represent himself at that hearing.

## STATEMENT CONCERNING ORAL ARGUMENT

Given the complicated legal and factual questions presented by this appeal, counsel believes that oral argument is warranted. Oral argument will allow the Court to better understand the nuances of the district court's evidentiary rulings, counsel's retroactivity argument, and the Sixth Amendment implications of the district court's delayed grant of Piette's request to represent himself.

PARSONS BEHLE & LATIMER

/s/ Alan S. Mouritsen

Alan S. Mouritsen
*Attorney for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

I, Alan S. Mouritsen, hereby certify as follows:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the entire brief contains 12,963, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I relied on the word count function of Microsoft Word 2010 to ascertain this information.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14-point font size and Century Schoolbook type style.

/s/ Alan S. Mouritsen
ALAN S. MOURITSEN

## <u>CERTIFICATE OF COMPLIANCE WITH GENERAL ORDER 95-01</u>

I, Alan S. Mouritsen, hereby certify as follows:

1.      all privacy redactions have been made;

2.      the ECF submission of the **SECOND CORRECTED OPENING BRIEF** is an exact copy of the seven hard copies filed with the Court;

3.      the ECF submission of the foregoing **SECOND CORRECTED OPENING BRIEF** was scanned for viruses with the most recent version of Microsoft Forefront and, according to the program, is free of viruses.

/s/ Alan S. Mouritsen
ALAN S. MOURITSEN

*Attorney for Appellant*

## CERTIFICATE OF SERVICE

In accordance with 10th Cir. R. 25.4, I, Alan S. Mouritsen, hereby certify that on November 26, 2020, I electronically served a copy of the **SECOND CORRECTED OPENING BRIEF** via ECF, which, in turn, accomplished electronic service on the following.

Linda A. Epperley
Sarah McAmis
Office of the United States Attorney
Eastern District of Oklahoma
Tel: 918-684-5100
520 Denison Avenue
Muskogee, OK 74401
linda.epperley@usdoj.gov
sarah.mcamis@usdoj.gov

/s/ Alan S. Mouritsen
ALAN S. MOURITSEN

*Attorney for Appellant*

# Addendum A

# 18 U.S.C. § 1201

**(a)** Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when--

**(1)** the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

**(2)** any such act against the person is done within the special maritime and territorial jurisdiction of the United States;

**(3)** any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;

**(4)** the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title; or

**(5)** the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

**(b)** With respect to subsection (a)(1), above, the failure to release the victim within twenty-four hours after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away shall create a rebuttable presumption that such person has been transported in interstate or foreign commerce. Notwithstanding the preceding sentence, the fact that the presumption under this section has not yet taken effect does not preclude a Federal investigation of a possible violation of this section before the 24-hour period has ended.

**(c)** If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

**(d)** Whoever attempts to violate subsection (a) shall be punished by imprisonment for not more than twenty years.

**(e)** If the victim of an offense under subsection (a) is an internationally protected person outside the United States, the United States may exercise jurisdiction over the offense if (1) the victim is a representative, officer, employee, or agent of the United States, (2) an offender is a national of the United States, or (3) an offender is afterwards found in the United States. As used in this subsection, the United States includes all areas under the jurisdiction of the United States including any of the places within the provisions of sections 5 and 7 of this title and section 46501(2) of title 49. For purposes of this subsection, the term "national of the United States" has the meaning prescribed in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)).

**(f)** In the course of enforcement of subsection (a)(4) and any other sections prohibiting a conspiracy or attempt to violate subsection (a)(4), the Attorney General may request assistance from any Federal, State, or local agency, including the Army, Navy, and Air Force, any statute, rule, or regulation to the contrary notwithstanding.

## (g) Special Rule for Certain Offenses Involving Children.--

**(1) To whom applicable.** --If--

**(A)** the victim of an offense under this section has not attained the age of eighteen years; and

**(B)** the offender--

**(i)** has attained such age; and

**(ii)** is not--

**(I)** a parent;

**(II)** a grandparent;

**(III)** a brother;

**(IV)** a sister;

**(V)** an aunt;

**(VI)** an uncle; or

**(VII)** an individual having legal custody of the victim;

the sentence under this section for such offense shall include imprisonment for not less than 20 years.

**(h)** As used in this section, the term "parent" does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court order.

### 18 U.S.C. § 2423(b) (1994)

(b) TRAVEL WITH INTENT TO ENGAGE IN SEXUAL ACT WITH A JUVENILE.—A person who travels in interstate commerce, or conspires to do so, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, or conspires to do so, for the purpose of engaging in any sexual act (as defined in section 2245) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 10 years, or both.

### 18 U.S.C. § 3283 (1994)

No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years.

### 18 U.S.C. § 3283 (2003)

No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child

under the age of 18 years shall preclude such prosecution during the life of the child.

## 18 U.S.C. § 3299

Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A.

## Fed. R. Evid. 404

**(a) Character Evidence.**

**(1) Prohibited Uses.** Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

**(2) Exceptions for a Defendant or Victim in a Criminal Case.** The following exceptions apply in a criminal case:

**(A)** a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

**(B)** subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:

**(i)** offer evidence to rebut it; and

**(ii)** offer evidence of the defendant's same trait; and

**(C)** in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

**(3) Exceptions for a Witness.** Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

**(b) Crimes, Wrongs, or Other Acts.**

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

**(B)** do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

## Fed. R. Evid. 414

**(a) Permitted Uses.** In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

**(b) Disclosure to the Defendant.** If the prosecutor intends to offer this evidence, the prosecutor must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony. The prosecutor must do so at least 15 days before trial or at a later time that the court allows for good cause.

**(c) Effect on Other Rules.** This rule does not limit the admission or consideration of evidence under any other rule.

**(d) Definition of "Child" and "Child Molestation."** In this rule and Rule 415:

**(1)** "child" means a person below the age of 14; and

**(2)** "child molestation" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:

**(A)** any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

**(B)** any conduct prohibited by 18 U.S.C. chapter 110;

**(C)** contact between any part of the defendant's body--or an object--and a child's genitals or anus;

**(D)** contact between the defendant's genitals or anus and any part of a child's body;

**(E)** deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

**(F)** an attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

## Fed. R. Evid. 403

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

# Addendum B

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 1

Case 6:17-cr-00079-RAW   Document 226   Filed 02/21/20   Page 1 of 7
Appellate Case: 20-7031   Document: 010110536935   Date Filed: 06/02/2021   Page: 418

# UNITED STATES DISTRICT COURT

Eastern District of Oklahoma

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| HENRI MICHELLE PIETTE, | Case Number:   CR-17-00079-001-RAW |
| a/k/a Henri Michel Piette, a/k/a Henri Billy, | USM Number:   08301-063 |
| a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., | |
| a/k/a Michael Wayne Mansfield, | Warren Gotcher |
| a/k/a Christopher Allen McAnear | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☒ was found guilty on count(s)   1 & 2 of the Indictment
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1201(a)(1) & 1201(g) | Kidnapping | January 1997 | 1 |
| 18:2423(b) | Travel with Intent to Engage in Sexual Act with a Juvenile | January 1997 | 2 |

   The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

February 20, 2020
Date of Imposition of Judgment

*Ronald A. White*

Ronald A. White
United States District Judge
Eastern District of Oklahoma

February 21, 2020
Date

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __7__

DEFENDANT: Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne Mansfield, a/k/a Christopher Allen McAnear
CASE NUMBER: CR-17-00079-001-RAW

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Life on Count 1 & 360 months on Count 2 of the Indictment. The terms of imprisonment imposed on each of Counts 1 & 2 shall be served concurrently.

☒ The court makes the following recommendations to the Bureau of Prisons:

That the Bureau of Prisons evaluate the defendant and determine if the defendant is a suitable candidate for the Intensive Drug Treatment Program.  Should the defendant be allowed to participate in the program, it is further recommended that the defendant be afforded the benefits prescribed and set out in 18 U.S.C. § 3621(e) and according to Bureau of Prisons' policy.

That the defendant be placed in a federal facility to ensure the defendant's safety.

The Court shall be informed in writing as soon as possible if the Bureau of Prisons is unable to follow the Court's recommendations, along with the reasons for not following such recommendations made by the Court.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m.   on _____ .
☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____ .
☐ as notified by the United States Marshal.
☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 6:17-cr-00079-RAW   Document 226   Filed 02/21/20   Page 3 of 7
Appellate Case: 20-7000   Document: 010110365939   Date Filed: 06/02/2020   Page: 420
AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

|  | Judgment—Page 3 of 7 |
|--|--|

DEFENDANT: Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne Mansfield, a/k/a Christopher Allen McAnear

CASE NUMBER: CR-17-00079-001-RAW

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :
5 years on each of Counts 1 & 2 of the Indictment. The terms of supervised release shall run concurrently with one another.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:         Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne
                   Mansfield, a/k/a Christopher Allen McAnear
CASE NUMBER:       CR-17-00079-001-RAW

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer, after obtaining Court approval, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

DEFENDANT:     Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne Mansfield, a/k/a Christopher Allen McAnear

CASE NUMBER:     CR-17-00079-001-RAW

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall register pursuant to the provisions of the Sex Offender Registration and Notification Act, or any applicable state registration law.

2. The defendant shall attend and participate in a mental health treatment program and/or sex offender treatment program as approved and directed by the Probation Officer. The defendant shall abide by all program rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph testing to determine if you are in compliance with the conditions of release. The defendant may be required to contribute to the cost of services rendered in an amount to be determined by the probation officer, based on your ability to pay. Any refusal to submit to assessment or tests as scheduled is a violation of the conditions of supervision.

3. The defendant shall not be at any residence where children under the age of 18 are residing without the prior written permission of the United States Probation Office.

4. The defendant shall not be associated with children under the age of 18 except in the presence of a responsible adult who is aware of his background and current offense, and who has been approved by the United States Probation Officer.

5. The defendant shall submit to a search conducted by a United States Probation Officer of his person, residence, vehicle, electronic communication, data storage device, media, office and/or business at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervised release. Failure to submit to a search may be grounds for revocation.

6. The defendant shall participate in a program approved by the United States Probation Office for the treatment of narcotic addiction, drug dependency, or alcohol dependency, which will include testing to determine if he has reverted to the use of drugs or alcohol and may include outpatient treatment.

7. The defendant shall not incur new credit charges or open additional lines of credit without the prior approval of the probation officer, and shall allow the Probation Officer access any or all financial records or activities upon request.

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case 6:17-cr-00079-RAW   Document 226   Filed 02/21/20   Page 6 of 7
Appellate Case: 20-7035   Document: 010110365939   Date Filed: 06/02/2020   Page: 423

Judgment — Page ___6___ of ___7___

DEFENDANT: Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne Mansfield, a/k/a Christopher Allen McAnear

CASE NUMBER: CR-17-00079-001-RAW

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ 50,067.00 | $ 50,000 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Transitioning Families RE: Rosalynn McGinnis & Family P O Box 1163 Glen Ellen, CA  95442 | $50,067.00 | $50,067.00 | |

| **TOTALS** | $ 50,067.00 | $ 50,067.00 | |
|---|---|---|---|

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for  ☐ fine  ☒ restitution.

☐ the interest requirement for  ☐ fine  ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

|  | Judgment — Page | 7 | of | 7 |

DEFENDANT:   Henri Michelle Piette, a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a Michael Wayne Mansfield, a/k/a Christopher Allen McAnear
CASE NUMBER:   CR-17-00079-001-RAW

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐  Lump sum payment of $ _____ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with   ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

B  ☒  Payment to begin immediately (may be combined with   ☐  C,   ☐  D, or   ☒  F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☒  Special instructions regarding the payment of criminal monetary penalties:

    Said special assessment of $200 is due immediately.  Said restitution of $50,067 is due and payable immediately. Said fine of $50,000 is due and payable immediately.

    Said special assessment, restitution and fine shall be paid through the United States Court Clerk for the Eastern District of Oklahoma, P.O. Box 607, Muskogee, OK 74402.

    If the defendant's financial condition does not allow for immediate payment of the restitution and fine, the defendant shall make monthly installments of not less than $500 beginning sixty days from the defendant's release from incarceration.  Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon non-exempt property of the defendant discovered before or after the date of this judgment.  In the event the defendant receives any federal or state income tax refund during the period of supervision, the defendant shall pay 100% of the total refund toward said restitution and fine..

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Case Number
    Defendant and Co-Defendant Names                       Joint and Several         Corresponding Payee,
    *(including defendant number)*          Total Amount                 Amount              if appropriate

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

# Addendum C



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

DEC **1 3** 2017

PATRICK KEANEY
Clerk, U.S. District Court

By_____

Deputy Clerk

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

**HENRI MICHELLE PIETTE,**
**a/k/a Henri Michel Piette,**
**a/k/a  Henri Billy,**
**a/k/a Dan Reed,**
**a/k/a Billy Ira Sloop Jr.,**
**a/k/a Michael Wayne Mansfield,**
**a/k/a Christopher Allen McAnear,**

        *Defendant.*

Case No.  **CR 17-079-RAW**

## I N D I C T M E N T

The Federal Grand Jury charges:

### COUNT ONE

### KIDNAPPING
### [18 U.S.C. §§ 1201(a)(1) & 1201(g)]

In or about January 1997, the exact date being unknown to the Grand Jury, in the Eastern District of Oklahoma, and elsewhere, the defendant, **HENRI MICHELLE PIETTE, a/k/a Henri Michel Piette, a/k/a  Henri Billy,  a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a  Michael Wayne Mansfield, a/k/a Christopher Allen McAnear,** an adult over 18 years of age, did unlawfully and willfully seize, confine, inveigle, decoy, kidnap, abduct, carry away, and hold for some benefit a female who had not attained the age of 18 years, who is known to the Grand Jury and, in committing, and in furtherance of the commission of the offense, transported the female in Interstate and Foreign commerce from the State of Oklahoma to States outside of Oklahoma and Foreign countries, in violation of Title 18, United States Code, Sections 1201(a)(1) and 1201(g).

1

## COUNT TWO

### TRAVEL WITH INTENT TO ENGAGE IN SEXUAL ACT WITH A JUVENILE
### [18 U.S.C. § 2423(b)]

From in or about January 1997, the exact date being unknown to the Grand Jury, to July 28, 2016, in the Eastern District of Oklahoma, and elsewhere, the defendant, **HENRI MICHELLE PIETTE**, **a/k/a Henri Michel Piette, a/k/a Henri Billy, a/k/a Dan Reed, a/k/a Billy Ira Sloop Jr., a/k/a  Michael Wayne Mansfield, a/k/a Christopher Allen McAnear,** did travel in interstate commerce for the purpose of engaging in any sexual act, as defined in Title 18, United States Code, Section 2246, with another person under 18 years of age, said sexual act being a violation of Chapter 109A of the United States Code, in violation of Title 18, United States Code, Section 2423(b).

A TRUE BILL:

BRIAN J. KUESTER
United States Attorney

D. EDWARD SNOW, OBA #16439
Assistant United States Attorney

Pursuant to the E-Government Act, the original indictment has been filed under seal in the Clerk's Office.

s / Foreperson
FOREPERSON OF THE GRAND JURY

2

# Addendum D

1    under 404.  But we also believe, as an element -- as an

2    essential element of the charge.  Not another bad act, but

3    as the bad act that forms the basis of the charge, namely

4    the taking, was for a benefit and that benefit was to

5    sexually abuse her as well as other children.  So that's why

6    there's so much crossover with it.

7              So, again, 404?  Yes, we believe it is 404.

8    But you don't even have to get there if you believe that

9    it's res gestae.

10             THE COURT:  Well, I think it comes in.  And I

11   think it is part of the res gestae, both the physical

12   violence and the sexual encounters for -- can you hear me?

13             MR. GOTCHER:  I can, Your Honor.

14             THE COURT:  Who can't?

15             MR. GOTCHER:  I can.

16             THE COURT:  Okay.  Thank you.  All right.  Both

17   because it goes to the issue of consent, and it is

18   inextricably intertwined with the charged crimes.

19             As far as 404(b), I think, as I've stated

20   earlier, it would come -- 404(b) is a rule of inclusion, not

21   exclusion, and I think it goes to the issues of both motive

22   and plan.  I'm not sure about the others.  I don't want to

23   throw it in as a catch-all kitchen sink for allowing it in.

24   But as far as motive and plan to establish the so-called

25   cult is there.  It works enough under a rule of inclusion,

1    secondly.  And, thirdly, under 414, it is propensity

2    evidence as long as -- as well as everything else.  And 414

3    allows evidence like this in a -- in this kind of case

4    typically, and is to be liberally construed.

5                  And so the motion in limine as to the

6    so-called 404(b) evidence will be -- will be denied.

7    Besides that, I still have to do a balancing test under 403.

8    And I believe that the probative value of the evidence is

9    certainly not substantially outweighed by the prejudicial

10   effect.  So that adds to my denial of the motion in limine.

11   It is clear that the government's theory of the case is

12   plausible.  It's for the jury to decide whether it's

13   persuasive.  But it's certainly plausible.  And so, under

14   403, we don't have a reason to keep it out.  So thank you.

15                  I think the motion for permission to take

16   depositions is moot since we've come up with the Skype

17   mechanism.  Motion for continuance has been ruled on.

18                  Let's talk about the -- I guess it's not a

19   motion in limine.  It's defendant's introduction of the NCIS

20   report and expert witness Jay Truly.  I'm a little -- I will

21   admit, I'm a little confused on this issue.  Mr. Gotcher,

22   did you hear the subject I'm bringing up now?

23              MR. GOTCHER:  No, sir, Your Honor.  Mr. Piette was

24   talking to me.  I had trouble hearing both.  I asked him if

25   I could listen to you.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                Case No. CR-17-079-RAW

HENRI MICHELLE PIETTE,

        Defendant.

## ORDER

This matter came on for pretrial conference on May 23, 2019. The court made certain rulings and took other matters under advisement. This order memorializes the rulings made. The defendant's motion in limine (#145) as to government's witnesses Behrman-Lippert and Giusti is deferred until trial. The parties have agreed that any *Daubert* hearing, if necessary, may be conducted at trial prior to the witness testifying in front of the jury.

The defendant's motion in limine (#151) regarding alleged acts of sexual abuse is denied. As to Rule 404(b) F.R.Evid., the court finds the evidence admissible to (at least) show motive and plan. The court also finds that the uncharged acts are admissible as *res gestae*. Finally, Rule 414 F.R.Evid. states in pertinent part: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation." By their terms, the charges in the present indictment do not accuse the defendant of child molestation. The Tenth Circuit, however, applied Rule 414 in a §2423 case in *United States v. Meacham,* 115 F.3d 1488, 1491 (10th

Cir.1997).  *See also United States v. Batton,* 602 F.3d 1191, 1196-98 (10th Cir.2010).

This ruling does not preclude the court from ultimately finding testimony of incidents to

be cumulative or unfairly prejudicial.

The defendant's motion for permission to take depositions (#155) is denied in view

of the parties' agreement that live video testimony may be presented.

The motion of the defendant for continuance (#159) is denied.

**ORDERED THIS 28th DAY OF MAY, 2019.**

_____

**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

2

# Addendum E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-17-079-RAW |
| | ) | |
| HENRI MICHELLE PIETTE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the court is the defendant's motion to dismiss. Defendant is charged in a two-count indictment with (Count One) kidnapping in violation of 18 U.S.C. §§1201(a)(1) & 1201(g) and (Count Two) travel to engage in a sexual act with a juvenile in violation of 18 U.S.C. §2423(b). Defendant seeks dismissal based on expiration of the statute of limitations.

Particularly given the dates involved in this case (to be discussed), the court approaches the issue with caution. A statute of limitations reflects a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict. *United States v. DeLia,* 906 F.3d 1212, 1217 (10th Cir.2018)(citation omitted). This time limit is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. *Id.* (citation omitted). Criminal statutes of limitation are to be liberally interpreted in favor of repose. *Id.* at 1222 (citation omitted)[1].

---

[1]As a countervailing consideration, it has been stated that in enacting the extensions of limitations periods discussed in this order, Congress evinced a general intention to cast a wide net to ensnare as many offenses against children as possible. *See Weingarten v. United States,* 865 F.3d 48, 60 (2d Cir.2017).

The government asserts that the alleged victim was born on May 14, 1984 and that in January 1997 she was 12 years of age.  (#136 at 9).  Prior to November 29, 1990, there was no specific statute of limitation for child sex crimes and thus 18 U.S.C. §3282 applied to all such charges.  *United States v. Greene,* 2019 WL 11579992, *3 (D.Alaska 2010).  On November 29, 1990, Congress enacted 18 U.S.C. §3509(k), a statute of limitations for offenses "involving the sexual or physical abuse of a child under the age of 18 years."  *Id.* That provision allowed for the prosecution of such offenses at any time before the child reached the age of 25 years.  *Id.*

In 1994, §3905(k) was recodified (without any substantive change) at 18 U.S.C. §3283.  Section 3283 was revised in 2003 to add the crime of kidnapping and to provide that no statute of limitation would preclude prosecution of such offense "during the life of the child" if the crime were committed against a crime under the age of 18 years.  *United States v. Pittman,* 2015 WL 4772731, *2 (S.D.Cal.2015).  Section 3283 was further revised in 2006, providing that no statute of limitations would bar prosecution "during the life of the child, or for ten years after the offense, whichever is longer."  *Id.*[2]

The general statute of limitations for non-capital federal crimes is five years.  *See* 18 U.S.C. §3282(a).  Count One alleges that the kidnapping took place "[i]n or about January 1997."  The indictment was filed December 13, 2017, over twenty years after this alleged date.  Other principles must be examined, however.  "[I]t is well established that general

---

[2]Section 3283 uses the spelling "kidnaping," while Section 1201 uses the spelling "kidnapping," as does the Indictment.  This court will use the latter spelling.

2

kidnapping, under 18 U.S.C. §1201, is considered a continuing crime." *United States v. Clark*, 2012 WL 13081234, *3 (D.N.M.2012)(citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999); *United States v. Denny-Shaffer*, 2 F.3d 999, 1018 (10th Cir.1993)).

If the crime charged is a continuing offense, the statute of limitations does not begin running until the conduct has run its course. *See United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir.2003). For kidnapping, this means the crime "does not end until the victim is free." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 182 (1999); *United States v. Godinez*, 998 F.2d 471, 473 (7th Cir.1993)(the principle "[t]hat kidnapping is a continuing offense . . . means that the statute of limitations runs from the release rather than the capture of the victim"). The government argues that "[i]n this case, that was on July 28, 2016, when the victim appeared with eight children at the United States Consular General Offices in Nogales, Mexico requesting help to get away from the Defendant." (#136 at 8).[3]

The parties address the already-referenced 18 U.S.C. §3283, which provides that "[n]o statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years shall preclude such prosecution during the life of the child, or for ten years after the offense, whichever is longer." The difficulty from the government's perspective is that "prior to its amendment

---

[3]Therefore (if the court's understanding is correct) the government will seek to demonstrate that this kidnapping continued uninterrupted (with the victim held involuntarily against her will) from in or about January, 1997 until July 28, 2016. Any "break" within this period would affect calculation of the statute of limitations. *See United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir.1993)(if the victim is no longer being held against her will, the kidnapping has ended). This factual issue will likely be submitted to the jury by way of interrogatory.

in 2003, this statute only extended the statute of limitations for sexual and physical abuse of a child (not kidnapping)." *United States v. Clark,* 2012 WL 13081234, *2 (D.N.M.2012). *See also United States v. Miller,* 911 F.3d 638, 643 (1st Cir.2018).

Nevertheless, the government argues that this statute applies to the case at bar because (in 1997) kidnapping was an offense involving sexual and physical abuse of a minor. (#136 at 9). The court is not persuaded. Kidnapping <u>may</u> be accompanied by sexual and physical abuse, but in 1997 (as now) the offense was defined as unlawfully seizing another person and holding "for ransom or reward or otherwise." *See United States v. Adams,* 83 F.3d 1371, 1372 (11th Cir.1996). The offenses are distinct. This court therefore concludes that "[i]f, in fact, the statute of limitations had already run prior to the 2003 amendment, this revised statute would not be sufficient to retroactively revive and extend the previously expired statute of limitations." *United States v. Clark,* 2012 WL 13081234, *2 (D.N.M.2012). In other words, §3283 did not by its terms apply to kidnapping until 2003, years after the kidnapping alleged in this case. If, however, the government demonstrates that the general statute of limitations had <u>not</u> already run prior to the 2003 amendment, §3283 is applicable to Count One.

The parties have also addressed 18 U.S.C. §3299, another statute creating an exception to the general statute of limitations. That statute provides in pertinent part that "[n]otwithstanding any other law, an indictment may be found or an information instituted at any time without limitation of any offense under section 1201 involving a minor victim." The statute's plain language applies to Count One of the case at bar. This statute, however,

4

was enacted July 27, 2006.  *See United States v. Coutentos,* 651 F.3d 809, 817 (8th Cir.2011).
This date is over nine years after the kidnapping alleged in Count One.

A statute that revives a limitations period that has already expired offends the Ex Post
Facto Clause (Article I, Section 9, Clause 3 of the United States Constitution).  *See Stogner
v. California,* 539 U.S. 607, 609 (2003).  On the other hand, "the application of an extended
statute of limitations to offenses occurring prior to the legislative extension, where the prior
and shorter statute of limitations has not run as of the date of such extension, does not violate
the *ex post facto* clause."  *United States v. Taliaferro,* 979 F.2d 1399, 1402 (10th Cir.1992).
This court employs a similar analysis as it did regarding §3283.  Therefore, §3299 is
applicable to Count One if the evidence reflects the general five-year limitations period had
not expired as of July 27, 2006, the enactment date of §3299.

The court now addresses Count Two.  It alleges that the crime (travel in interstate
commerce with the intent to engage in a sexual act with a juvenile) extended from in or about
January 1997 until July 28, 2016.  Such an allegation ostensibly obviates the statute of
limitations issue, but presents a conceptual difficulty.  Was the defendant engaged in a single
offense of interstate travel for nearly twenty years?  The government argues that (as with
kidnapping) violation of 18 U.S.C. §2423(b) also constitutes a continuing offense, but cites
no authority on the matter.  The court has also found no authority, and the same logic which
makes kidnapping a continuing offense would not be obviously applicable to §2423(b).

5

Another difficulty is presented. The government notes (#136 at 3 n.1) that its charging language in Count Two tracks the "original version" of §2423(b)[4]. That language requires that (1) the sought-after victim must be a person under 18 years of age, and (2) the intended conduct must qualify as an offense under Chapter 109A if the conduct had taken place within the special maritime and territorial jurisdiction of the United States. *See United States v. Stokes*, 726 F.3d 880, 895 (7th Cir.2013). It appears, however, this version was only in effect until November 1, 2002. *Id.* The present version, by contrast, makes no reference to the age of the victim and refers to "any illicit sexual conduct with another person."

While the present statutory language might theoretically "cover" defendant's alleged conduct, it is not the language in the indictment. Therefore (apart from the statute of limitations question) there is an argument that the defendant may only be convicted for conduct within the time span that the "original version" of §2423(b) was in effect, 1994 to 2002. Under the defendant's Fifth Amendment right to be indicted by a grand jury on the charges against him and the Sixth Amendment right to receive notice of those charges, a court cannot permit a defendant to be tried on charges that are not made in the indictment. *United States v. Miller*, 891 F.3d 1220, 1237 (10th Cir.2018).

By its terms, 18 U.S.C. §3299 applies to offenses under Chapter 117 of Title 18. Section 2423(b) is such an offense. *See United States v. Dove*, 343 Fed.Appx. 428, 431 (11th Cir.2009). Again, §3299 did not exist until 2006. It is applicable to Count Two, however,

---

[4]Section 2423(b) was enacted in 1994. *See United States v. Durham*, 902 F.3d 1180, 1195 (10th Cir.2018).

6

*if* the statute of limitations had not previously expired.  The court finds under the present record (and the framing of the Indictment) that it had not, but a different conclusion may result after the presentation of evidence.

The court also finds §3283 applies to a defendant charged with §2423(b).  *See United States v. Borazanian,* 148 Fed.Appx. 352, 353 (6th Cir.2005). Again, in 1990 (when the alleged victim was six years old) 18 U.S.C. §3509(k), "extended the five-year statute of limitations for crimes of child sexual abuse until the child victim reached twenty-five years of age." *Miller,* 911 F.3d at 643.  "Approximately four years later, the text of the statute was recodified (without any substantive change) at 18 U.S.C. §3283." *Id.*  The alleged victim was ten years old at that time.  In 2003 (when the alleged victim was nineteen years old) the statute was amended to extend the time period for prosecution to "during the life of the child." *Id.*  These extended statutes of limitation overlap.  Thus, under the theory that such amendments may be applied retroactively to extend a filing period for charges that were still viable at the time of the amendment, (*See United States v. Leo Sure Chief,* 438 F.3d 920, 924 (9th Cir.2006)), Count Two is not time-barred as both §3283 and §3299 properly apply.[5]  This is a preliminary ruling subject to reconsideration.

---

[5]In *Miller,* the First Circuit stated it did "not hold that the 2003 amendment to 18 U.S.C. §3283 applies – or does not apply – to conduct that occurred prior to 2003." 911 F.3d at 645 n.6.  The argument has also been presented that §3283 does not apply to an offense under 18 U.S.C. §2423(b) because the substantive statute criminalizes interstate travel for an illicit purpose and does not require any actual sexual abuse of a child.  Two courts of appeals have rejected the argument. *See United States v. Schneider,* 801 F.3d 186, 195-197 (3rd Cir.2015); *Weingarten v. United States,* 865 F.3d 48, 58-60 (2d Cir.2017).

7

Commission of a federal crime within the statute-of-limitations period is not an element of the offense, and it is up to the defendant to raise the limitations defense. *Smith v. United States,* 133 S.Ct. 714, 720 (2013).   In this context, however, a pretrial motion to dismiss based on statute of limitations grounds may be premature if the indictment is facially sufficient and the defendant's argument for dismissal requires a determination of factual issues.   *United States v. Levine,* 249 F.Supp.3d 732, 736 (S.D.N.Y.2017).   Although premature in this technical sense, defendant properly filed the motion and the court appreciates notice of a complicated issue.  The court will deny the present motion, but defendant may re-urge the issue at the conclusion of the government's case-in-chief.


It is the order of the court that the motion of the defendant to dismiss (#129) is hereby denied without prejudice.


**ORDERED THIS 13th DAY OF MAY, 2019.**


Ronald A. White
United States District Judge
Eastern District of Oklahoma

# Addendum F

# DURATION OF KIDNAPPING

The government contends that the kidnapping alleged in Count 1 extended from January 1997 until July 28, 2016.

Under the law, if the victim of a kidnapping is no longer held against her will, the kidnapping is over.

As one of the defenses, defendant contends Rosalyn McGinnis was (if at all), at a date earlier than July 28, 2016, no longer held against her will.

Defendant must prove this contention by a preponderance of the evidence, which is defined as "more likely than not."

On the verdict form, only if you have found the defendant guilty as to Count 1, you will be asked to determine if Rosalyn McGinnis was no longer held against her will at an earlier date, and what that date was.  This will aid the court in making a separate legal determination in regard to this case.

In determining if Rosalyn McGuinness was continually held against her will (physically and/or psychologically), you should consider all the testimony you have heard in the case.

CR-17-079 PIETTE JURY INSTRUCTIONS.DOCX

Page  18

# Addendum G

Case 6:17-cr-00079-RAW   Document 255   Filed 06/29/20   Page 3 of 51
Appellate Case: 20-7008   Document: 84   Date Filed: 11/26/2020   Page: 113

3

COURT IN SESSION

(1:58 p.m.)

THE COURT:  All right.  We are on the record in CR-17-79, United States of America versus Henri Michelle Piette.  Ms. Sarah McAmis is present for the government.

MS. McAMIS:  Yes, Your Honor.

THE COURT:  Mr. Warren Gotcher is present for the defendant and the defendant is present in the courtroom.

Preliminary statement, I don't know if you can tell, but I have a rather vicious cold.  It may even be necessary for me -- I almost lost my voice this morning at another hearing. I probably will again.  If necessary, I will take a break. I am sorry for the inconvenience.

This matter comes on today for sentencing and for a motion hearing, the motion in particular being the Defendant's Pro Se Motion to Withdraw Attorney and Mr. Gotcher's response to that motion.

Mr. Gotcher, I don't intend to ask you any questions that would need you to reveal attorney/client privilege information.  Do you see any need for us to do this ex parte?

MR. GOTCHER:  No, sir, Your Honor.  Mr. Piette has indicated to me that he wants me to withdraw from the case. I have no objection to that.  I think I even filed my own motion to withdraw based upon his motion.  So I don't think I need to go any further.  I think -- do you still want me to

Case 6:17-cr-00079-RAW   Document 255   Filed 06/29/20   Page 4 of 51
Appellate Case: 20-7008   Document: 84   Date Filed: 11/26/2020   Page: 114

4

1    withdraw?  Is that correct, Mr. Piette?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Okay.  Well, as -- no, go ahead.

4            MR. GOTCHER:  I do recognize my obligation to stay

5    through sentencing and I would -- the only thing I would say

6    is probably it should not be granted until after the hearing

7    is over.

8            THE COURT:  And the appeal time.

9            MR. GOTCHER:  I have also, Your Honor, prepared a

10   Notice of Intent to Appeal Pro Se for Mr. Piette.  He has

11   signed it today, assuming he has signed it today.  I told him

12   that if they would allow me to file it in person rather than

13   electronically, I will.  Otherwise, I will take it back to my

14   office and have it filed electronically.

15           THE COURT:  Okay.

16           MR. GOTCHER:  But he has signed it today.

17   Depending upon when we get out of here, if I have to do it

18       electronically, it may not be filed until tomorrow, but it

19   will be filed either today or tomorrow.

20           THE COURT:  All right.  Thank you.  What I am going

21   to do first, as a preliminary matter, is I am going to make

22   as Court's Exhibit -- throughout this litigation, Mr. Piette

23   has been a prolific letter writer.  Some to me, some to the

24   U.S. Attorney's office, that I've been copied on, some to the

25   Probation Office.  Those have all been saved, at least the

Case 6:17-cr-00079-RAW   Document 255   Filed 06/29/20   Page 5 of 51
Appellate Case: 20-7008   Document: 84   Date Filed: 11/26/2020   Page: 115

5

1   ones addressed to the Court have been saved, I have them in a

2   three-and-a-half-inch thick binder, and those will be made

3   Court's Exhibit 1.  The folder contains all the letters that

4   the Court and the United States Probation Office received

5   from the defendant to-date, but some of which have been filed

6   and some of which have not been.  The Court marks these as

7   Court's Exhibit 1 and directs the Clerk to file the letters

8   under seal and to maintain the letters under seal for appeal

9   purposes until further order of the Court.

10       As far as the Motion to Withdraw, the Court will grant

11  the Motion to Withdraw to be in effect subsequent to this

12  sentencing hearing.  I think it is important that trial

13  counsel, who has been with the case since -- well, not day

14  one because this is Mr. Piette's second appointed attorney,

15  but be here through the sentencing hearing itself.  So the

16  Court directs that another attorney will be appointed by the

17  Federal Public Defender's office to see Mr. Piette's case

18  through appeal and that -- and that is, unless, Mr. Piette

19  wants to hire an attorney on his own.

20           THE DEFENDANT:  Are you saying --

21           THE COURT:  No, no, you tell Mr. Gotcher.

22               (OFF THE RECORD DISCUSSION BETWEEN

23                MR. GOTCHER AND THE DEFENDANT)

24           MR. GOTCHER:  We are ready to go on, Your Honor.

25           THE COURT:  All right.  Is that acceptable, Mr.

6

1    Piette?

2              THE DEFENDANT:  Yes, sir, yes.

3              THE COURT:  All right.  Thank you.  Moving to the

4    -- the letters are made exhibits for the reason that they

5    both support and contrast or somewhat vitiate the request for

6    new counsel.  At some points in time Mr. Piette expressed

7    vast disagreement with counsel and at other times Mr. Piette

8    thought Mr. Gotcher was the best thing since sliced bread.

9    So there is conflicting evidence whether there has been a

10   complete breakdown of the attorney/client relationship, but

11   the Court will err on the side of giving Mr. Piette new

12   counsel for appeal purposes.

13        All right.  We will move on to the sentencing phase of

14   this hearing.  Has the government received a copy of the

15   Presentence Report?

16             MS. McAMIS:  Yes, Your Honor, and we have no

17   objections thereto.

18             THE COURT:  Thank you.  Mr. Gotcher, have you

19   reviewed the Presentence Report with Mr. Piette?

20             MR. GOTCHER:  Yes, Your Honor.  I went over the

21   Presentence Report with Mr. Piette and I told him what my

22   objections would be and I have made those objections.

23             THE COURT:  All right.  Thank you.  Is there any-

24   thing you would like to add to your written objections?

25             MR. GOTCHER:  Well, Your Honor, I think they are