Case No. 20-7008

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

United States of America,

Plaintiff-Appellee,

v.

Henri Piette,

Defendant-Appellant.

## REPLY BRIEF

On Appeal from the United States District Court for the
Eastern District of Oklahoma
Case No. 6:17-cr-00079-RAW
The Honorable Ronald A. White

Alan S. Mouritsen
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
ecf@parsonsbehle.com
amouritsen@parsonsbehle.com
*Counsel for Defendant-Appellant*

April 6, 2021

## <u>TABLE OF CONTENTS</u>

REPLY BRIEF.................................................................................1

ARGUMENT .................................................................................4

I.   THE DISTRICT COURT ABUSED ITS DISCRETION IN
     ADMITTING THE MOLESTATION EVIDENCE. .........................4

     A.   The molestation evidence is not inextricably intertwined
          with the charged offenses. .......................................................4

     B.   The molestation evidence was not admissible under
          Rule 404(b). ...............................................................7

     C.   The unfair prejudice associated with the molestation
          evidence substantially outweighed its probative value
          under Rule 414. ....................................................10

     D.   The erroneous admission of the molestation evidence
          was not harmless................................................14

II.  PIETTE'S CONVICTION UNDER 18 U.S.C. § 2423(B)
     SHOULD BE REVERSED BECAUSE THE STATUTE OF
     LIMITATIONS RAN ON THAT COUNT BEFORE PIETTE
     WAS INDICTED IN DECEMBER 2017, AND §§ 3283 AND
     3299 DO NOT APPLY RETROACTIVELY. ..................................15

III. THE JURY WAS MIS-INSTRUCTED ON DEFENDANT'S
     BURDEN. ..............................................................19

IV.  THE DISTRICT COURT ERRED WHEN IT DENIED
     PIETTE THE RIGHT TO REPRESENT HIMSELF AT
     SENTENCING. ..........................................................22

CONCLUSION .................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buhl v. Cooksey*,
    233 F.3d 783 (3d Cir. 2000) ................................................................. 22

*Faretta v. California*,
    422 U.S. 806 (1975) ............................................................................... 23

*Fernandez-Vargas v. Gonzales*,
    548 U.S. 30 (2006) ............................................................................ 1, 15

*Freeman v. Pierce*,
    878 F.3d 580 (7th Cir. 2017) ............................................................... 23

*Landraf v. USI Film Prods.*,
    511 U.S. 244 (1994) .................................................................. 1, 15, 18

*Miller v. United States*,
    2021 WL 311860 (D. Me. Jan. 29, 2021) ............................................ 17

*Musacchio v. United States*,
    136 S. Ct. 709 (2016) ................................................................... 2, 3, 20

*Smith v. United States*,
    568 U.S. 106 (2013) ..................................................................... 2, 3, 20

*United States v. Alfred*,
    982 F.3d 1273 (10th Cir. 2020) ............................................................. 6

*United States v. Batton*,
    602 F.3d 1191 (10th Cir. 2010) ..................................................... 11, 12

*United States v. Benally*,
    500 F.3d 1085 (10th Cir. 2007) ........................................................... 11

*United States v. Castillo*,
    140 F.3d 874 (10th Cir. 1998) ............................................................. 10

*United States v. Corrigan,*
  548 F.2d 8792 (10th Cir. 1977 ...........................................................21

*United States v. DeLia,*
  906 F.3d 1212 (10th Cir. 2018).....................................................2, 20

*United States v. Duran,*
  133 F.3d 1324 (10th Cir. 1998) ...........................................................2

*United States v. Enjady,*
  134 F.3d 1427 (10th Cir. 1998).........................................................12

*United States v. Ford,*
  613 F.3d 1263 (10th Cir. 2010) ...........................................................4

*United States v. Garcia,*
  854 F.2d 3404 (9th Cir. 1988 ............................................................20

*United States v. Gentile,*
  235 F. Supp. 3d 649 (D.N.J. 2017)...............................................16, 18

*United States v. Green,*
  617 F.3d 233 (3d Cir. 2010) ................................................................4

*United States v. Guardia,*
  135 F.3d 1326 (10th Cir. 1998)....................................................11, 12

*United States v. Heatherly,*
  985 F.3d 254  (3d Cir. 2021) .......................................................11, 13

*United States v. Jeffries,*
  405 F.3d 682 (8th Cir. 2005)..............................................................18

*United States v. Koruh,*
  210 F.3d 390 (10th Cir. 2000)............................................................12

*United States v. LeCompte,*
  99 F.3d 274 (8th Cir. 1996)............................................................8, 11

*United States v. Lopez de Victoria,*
  66 M.J. 67 (C.A.A.F. 2008)................................................................18

*United States v. Loya-Rodriguez,*
    672 F.3d 849 (10th Cir. 2012) .............................................................. 23

*United States v. Magnan,*
    756 Fed. App'x 807 (10th Cir. 2018) .............................................. 11, 12

*United States v. McHorse,*
    179 F.3d 889 (10th Cir. 1999) .............................................................. 11

*United States v. Mercer,*
    653 Fed. App'x 622 (10th Cir. 2016) .................................................... 12

*United States v. Miller,*
    688 F.3d 322 (7th Cir. 2012) ................................................................ 14

*United States v. Miller,*
    911 F.3d 638 (1st Cir. 2018) ................................................................ 16

*United States v. Sturm,*
    673 F.3d 1274 (10th Cir. 2012) ............................................................ 11

*United States v. Sure Chief,*
    438 F.3d 920 (9th Cir. 2006) ................................................................ 18

*United States v. Toledo,*
    985 F.2d 14626 (10th Cir. 1993 ........................................................... 20

*United States v. Varoudakis,*
    233 F.3d 113 (1st Cir. 2000) .................................................................. 7

**Statutes**

18 U.S.C. § 2423(b) .......................................................................... 1, 6, 15

18 U.S.C. § 3283 ................................................................................ 16, 18

18 U.S.C. § 3299 ...................................................................................... 16

Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271 (2004) ......................... 18

Pub L. No. 101-647, § 2505(b), 104 Stat. 4789, 4861 .............................. 17

**Other Authorities**

3B Sutherland Statutory Construction § 72:3 (8th ed.) .........................17

# REPLY BRIEF

The most notable aspect of the government's response brief is what it does not say. The crux of Defendant's primary argument on appeal (Op. Br. 35–43) is that the district court abused its discretion in admitting graphic molestation evidence under Rule 403.

In response, the government does not point to anything in the record to suggest that the district court conducted the required analysis. Then, mimicking the district court, the government simply asserts without analysis (at 25) that the district court did not abuse its discretion. Nowhere does the government explain what makes the molestation evidence probative, or why the undeniably unfair prejudice associated with that evidence did not require its exclusion.

The government fares no better in responding to Defendant's three additional arguments. In contending that his conviction under 18 U.S.C. § 2423(b) was barred by the relevant statute of limitations, Defendant walked the Court through the three elements that guide the retroactivity analysis as set forth in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006), and *Landraf v. USI Film Prods.*, 511 U.S. 244 (1994). (Op. Br. 46–52.)

The government reduces Defendant's argument to two cases (Resp. Br. 37–39), never addressing the overarching principles of retroactivity upon which Defendant relied, and ultimately basing its counterargument on the unpublished report and recommendation of a magistrate judge. (Resp. Br. 38–39.) In all events, the government's position that applying an amended statute of limitations to pre-enactment conduct does not create an impermissible retroactive effect is unpersuasive.

And on it goes. In the Opening Brief, Defendant explained, based on a long line of cases from this Court and the Supreme Court, including *Musacchio v. United States*, 136 S. Ct. 709 (2016), *United States v. DeLia*, 906 F.3d 1212 (10th Cir. 2018), and *United States v. Duran*, 133 F.3d 1324 (10th Cir. 1998), that the district court plainly erred by instructing the jury that *Defendant* bore the burden to prove that the alleged crime occurred outside the relevant statute of limitations. (Op. Br. 52–59.) The government does not deny that the court imposed on the Defendant the burden of proof. Nor does the government mention any of the foregoing cases. Instead, the government puts its eggs in the basket of *Smith v. United States*, 568 U.S. 106 (2013). But *Smith* merely held that "[a]llocating to a defendant the burden of proving *withdrawal* [from a

conspiracy] does not violate the Due Process Clause." *Id.* at 110 (emphasis added). Three years after *Smith*, moreover, the Supreme Court reaffirmed that "[w]hen a defendant presses a limitations defense, the Government then *bears the burden* of establishing compliance with the statute of limitations." *Musacchio*, 136 S. Ct. at 718 (emphasis added).

Finally, the government argues that Defendant's request to represent himself was not clear and unequivocal. But Defendant asked the court to terminate the services of his attorney and to order his attorney to turn over all case materials to the Defendant. Nothing more was required to invoke Defendant's right to self-representation at sentencing.

## ARGUMENT

## I.   THE DISTRICT COURT ABUSED ITS DISCRETION IN AD-MITTING THE MOLESTATION EVIDENCE.

The jury never should have heard the molestation evidence. (Op. Br. 28–46.) It was not an essential component (either temporally or analytically) of the charged crimes. It did not qualify as other-act evidence under Rule 404(b) because it did not serve a non-character purpose. And it failed the sex-acts version of the Rule-403 test. The erroneous admission of this evidence, moreover, was not harmless.

The government's arguments to the contrary are unpersuasive.

### A.   The molestation evidence is not inextricably inter-twined with the charged offenses.

As already shown (Op. Br. 29–31), the molestation evidence is not *res gestae* of the charged offenses. As an initial matter, the government is wrong to suggest (at 20–21) that evidence may come in as *res gestae* if it bears "a close relationship" to the crimes charged. Evidence is *res gestae* if its absence would leave inexplicable gaps in the government's case or if the government is incapable of proving the charged crimes without it. *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010); *United States*

*v. Green*, 617 F.3d 233, 248–49 (3d Cir. 2010). Neither condition is satisfied here.

First, the government suggests (at 21–22) that Defendant's molesting of his daughters is an essential part of the government's story, but that's just not true. Failure to introduce the molestation evidence would not have left analytical or temporal gaps in the government's case or left the jury confused. That much is made clear by deleting the references to that evidence in the government's own recitation of the Defendant's bad acts:

> The Defendant repeatedly and for years sexually abused the victim. He had children with the victim~~, and then he sexually abused his daughters in the same manner~~. The Defendant forced the victim and the children to make signs and beg for money. Whatever money they earned, the Defendant took and spent on drugs and alcohol. He used drugs with the victim and he quoted verses from the Bible to her and to the children. The Defendant isolated the family by moving frequently. He would go by different names and assigned different names to the victim. The Defendant would physically beat the children and the victim. The Defendant's benefit, one that he maintained for a better part of 20 years, was to sexually abuse the victim starting when she was a child~~, have children with her so he could in turn sexually abuse those children~~, and have the entire family beg for money for, and turn it over to him. The Defendant used

> physical and sexual abuse to maintain control over
> the entire family.

(Resp. Br. 21.) Because the molestation evidence was not "essential to the context of the crime," it is not *res gestae*. *United States v. Alfred*, 982 F.3d 1273, 1279 (10th Cir. 2020).

Second, the molestation evidence did not directly prove any of the elements of the charged offenses. The government's first-time contention (at 22) that the molestation evidence might have satisfied the travel element of the § 2423-offense cannot be squared with the evidence and the argument introduced at trial. For one thing, the travel element of § 2423 is about the defendant traveling to engage in unlawful sexual acts with the victim (Rosalynn), not traveling to engage in the uncharged crime of "[p]rocuring his own-victim-factory." (Resp. Br. 22.) For another, at no point did the government or its witnesses attempt to tie the molestation evidence to Defendant's travel.

Implicitly acknowledging that the only potential relationship between the molestation evidence and the charged offenses was Rosalynn's consent, the government insists (at 22) that "Rosalynn had to be aware of [the Defendant] possibly abusing her daughters." But that's not what she testified. She said she knew that "[the Defendant] would hit them,"

6

but not that "they were being molested." 2:424:16. The government's re-tort (at 22) is that Rosalynn must have known that "such abuse was possible." Fair enough. And she was free to testify to that suspicion. But the fact that she didn't *know* that abuse was occurring means that evidence that her daughters *were* being abused could not have affected her ability to consent. At the end of the day, the government introduced the molestation evidence to prove that this Defendant had a "twisted need for young female girls." (Resp. Br. 22.) But the Defendant wasn't charged with being "twisted," and the evidence to prove *that* was not *res gestae* of the crimes he *was* charged with.

### B. The molestation evidence was not admissible under Rule 404(b).

The molestation evidence was also not admissible under Rule 404(b). The government devotes one paragraph (at 23–24) to the purpose component of Rule 404(b), continuing to insist that the molestation evidence proved the Defendant's motive and plan. But as explained in the Opening Brief, the government's contention (at 23) that the Defendant "was motivated to produce children who he could control to meet his sexual desires" is just forbidden character evidence repackaged as evidence of motive. *United States v. Varoudakis*, 233 F.3d 113, 120 (1st Cir. 2000)

7

("When prior bad act evidence is offered to prove motive for the crime, courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury."). The government also fails to point to anything in the record—besides the molestation evidence itself—to suggest that molesting his own kids was the Defendant's motive for allegedly kidnapping Rosalynn.

The government's argument on "plan" is even thinner. The government suggests (at 24) that the molestation evidence proves Defendant's "plan to create his own home where he could meet his perverse sexual needs." But that is not the kind of "plan" Rule 404(b) contemplates. Under Rule 404(b), other-act evidence can be introduced to show "the planning of or preparation for the charged offense." *United States v. LeCompte*, 99 F.3d 274, 277 (8th Cir. 1996). But the molestation evidence doesn't fit that description because it involves evidence of Defendant's conduct *after* he had already allegedly committed the charged offenses. Nor does it "prove identity" based on a "signature *modus operandi*" because, here, "identity is not at issue." *Id.* at 278; *see also id.* at 279 ("To the extent that the prior abuse of T.T. and the charged offense are in fact similar, they reflect misconduct common to all too many child sex

offenders. Therefore, T.T.'s testimony was not relevant to prove plan, preparation, or modus operandi.").

Even if the government is right on motive and plan, it does not bother to explain why graphic evidence of Defendant's alleged reprehensible acts involving his own daughters survives scrutiny under Rule 403. As for probative value, the government says only (at 25) that the Defendant benefited from "having a bevy of children to sexually abuse," without also mentioning that the Defendant never denied the benefit component of the kidnapping charge. Worse still, the government doesn't even mention the unfair prejudice component of Rule 403, perhaps reticent to highlight the inherently disturbing nature of the molestation evidence. Instead, the government simply asserts (at 25) that the "district court . . . weighed the questioned evidence and found [Rule 403] did not require its exclusion." For the reasons spelled out in the Defendant's Opening Brief, the government's conclusory assertion is not an adequate defense of the district court's conclusory ruling.

C.    **The unfair prejudice associated with the molestation evidence substantially outweighed its probative value under Rule 414.**

Finally, the district court also abused its discretion in admitting the molestation evidence under the Rule-403 component of Rule 414. (Op. Br. 35–43.) In defending the district court's ruling, the government implicitly acknowledges that the district court never walked through the Rule-403 analysis this Court's cases require. *See United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (holding that the district court's statement, "I find it's relevant and the probative value is not substantially outweighed by any prejudice," fell short of this Court's "minimum requirements"). The government goes on, however, to note (at 27) that this Court "liberally admits" such evidence and then describes several of the cases in which this Court has addressed the scope and meaning of Rules 413 and 414. But the government never explains on what basis the district court properly exercised its discretion to admit the molestation evidence in the context of this case.

Defendant does not deny, of course, that this Court has upheld the admission of other-sexual-acts evidence on "multiple different occasions." (Resp. Br. 27.) But when it comes to Rule 403, courts evaluate "each case

10

on its own facts and record." *United States v. Heatherly*, 985 F.3d 254 266 (3d Cir. 2021); *see United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998) ("We must consider the trial court's ruling in light of the unusual nature of this case."). And there are crucial differences between the government's cases and this one. For starters, in at least one of those cases, the defendant "failed to object to the admission of [the Rule-414] evidence," so the Court's review was "for plain error." *United States v. Magnan*, 756 Fed. App'x 807, 820 (10th Cir. 2018). In that same case, moreover, the Rule-414 evidence consisted of uncharged acts involving the *same* victims as the charged acts. *Id.* And most courts "are far more hesitant to affirm the admission of evidence of prior sexual acts or crimes committed against persons *other than the victim of the charged offense*." *LeCompte*, 99 F.3d at 277 (emphasis added).

The most critical difference, however, is that the defendant in every one of the government's cases denied engaging in the charged conduct.[1]

---

[1] *See United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012) ("Sturm vigorously denied having any such propensity . . . ."); *United States v. Batton*, 602 F.3d 1191, 1198 (10th Cir. 2010) ("Batton claimed at trial that he did none of the acts of which J.D. accused him . . . ."); *United States v. Benally*, 500 F.3d 1085, 1092 (10th Cir. 2007) ("whether the alleged assault against N.W. occurred was hotly disputed"); *United States v. McHorse*, 179 F.3d 889, 895 (10th Cir. 1999) ("Defendant

It was the defendant's denial in these cases that made the other-sexual-act evidence "highly probative," because it "help[ed] the jury determine the validity of [the victim's] accusations." *Batton*, 602 F.3d at 1198. Indeed, Congress enacted Rule 414 because, in most sex-abuse cases, the only evidence is the victim's and the defendant's conflicting testimony, and there are often "questions regarding the victim's credibility," which makes evidence of the defendant's other sexual acts "especially probative." *Batton*, 602 F.3d at 1196; *Guardia*, 135 F.3d at 1330.

But here, as explained in the Opening Brief (at 38–40), it was literally undisputed that the Defendant engaged in sexual acts with Rosalynn before she turned sixteen. 2:1051:12–14. Rosalynn was not cross-examined on the validity of her account, the jury heard the Defendant admit to sexual acts with Rosalynn before she turned sixteen, and the

---

categorically denied having sexually abused anyone."); *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1998) (admitting other-act evidence under Rule 413 only after a friend testified that the defendant "would never rape anyone"); *Magnan*, 756 Fed. App'x at 822 ("This factor goes to the nub of the case—Magnan vehmently [sic] denied that he was guilty and had the propensity to commit child sexual abuse."); *United States v. Mercer*, 653 Fed. App'x 622, 628 (10th Cir. 2016) ("Mercer . . . vigorously denied both that he was guilty and that he had a propensity to view child pornography."); *United States v. Koruh*, 210 F.3d 390, at *4 (10th Cir. 2000) (unpublished) ("Mr. Koruh's defense at trial was that the testimony of the alleged victims was a fabrication.").

Defendant's stipulation as to his fatherhood of Rosalynn's oldest child eliminated all doubt. Thus, there was no need to bolster Rosalynn's credibility on the question of sexual abuse—everyone on both sides took it as a given. That accepted premise robbed the other-act evidence of its probative value. Far from explaining what gave the molestation evidence its probative value despite there being no dispute about the sexual abuse, the government says almost nothing about any of this.

The government says even less about the unfair-prejudice side of the ledger. One will search the government's brief in vain, for example, for a description of the molestation evidence or an explanation of why the unfair prejudice associated with that evidence did not substantially outweigh its minimal probative value under the circumstances. The government's silence makes sense, not only because the district court itself never addressed the question, but also because there is no question that the horrifying descriptions of the Defendant's actions toward his biological daughters (Op. Br. 42–43) produced a visceral reaction from the jury that "extinguish[ed] the flame of reason." *Heatherly*, 985 F.3d at 268.

In sum, the only purpose the molestation evidence could have served was to inflame and incite the jury. Because that it is not a valid

purpose, even under Rule 414, the judgment against the Defendant must be reversed. *United States v. Miller*, 688 F.3d 322, 327 (7th Cir. 2012) ("[E]ven if the evidence does not create unfair prejudice solely because it rests on propensity, it may still risk a decision on the basis of something like passion or bias—that is, an improper basis.").

**D.    The erroneous admission of the molestation evidence was not harmless.**

The only thing the government says about harmlessness (at 32) is that the evidence of guilt was "overwhelming." But at no point does the government address Defendant's argument (Op. Br. 44) that his targeted defenses of consent (to the kidnapping charge) and motivating purpose (to the traveling-with-intent charge) were "technical but effective." There was evidence, spelled out in the opening brief, that Rosalynn consented (either at the outset or afterward) to her life with the Defendant, and that Defendant's travel was not undertaken with the motivating purpose of engaging in unlawful sexual acts. (Op. Br. 44–45; 57–58.) The government's highly inflammatory molestation evidence prevented the jury from rationally and conscientiously evaluating the merits of these defenses, rendering its admission anything but harmless.

## II. **PIETTE'S CONVICTION UNDER 18 U.S.C. § 2423(B) SHOULD BE REVERSED BECAUSE THE STATUTE OF LIMITATIONS RAN ON THAT COUNT BEFORE PIETTE WAS INDICTED IN DECEMBER 2017, AND §§ 3283 AND 3299 DO NOT APPLY RETROACTIVELY.**

In his Opening Brief, Defendant explained (at 46–52) that his traveling-with-intent conviction could not stand because the statute of limitations on that charge ran before Piette was charged in December 2017. This argument rests on the retroactivity principles outlined in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006), and *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). First, has Congress "expressly prescribed" the statute's temporal reach? *Fernandez-Vargas*, 548 U.S. at 37. Second, if not, do normal rules of statutory construction dictate the statute's "temporal reach"? *Id.* Third, if the answer to both questions is no, the next question is "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties." *Id.* Here, the answer to these three questions is no, no, yes, making the traveling-with-intent charge untimely.

In response, the government cites neither Supreme Court case, discusses none of the three components of the retroactivity analysis, and

reduces Defendant's argument to reliance on the courts' decisions in *United States v. Miller*, 911 F.3d 638 (1st Cir. 2018), and *United States v. Gentile*, 235 F. Supp. 3d 649 (D.N.J. 2017). By failing to meaningfully respond to or address the retroactivity principles discussed in the Opening Brief, the government has forfeited its retroactivity rebuttal.

The government's argument fails on its own terms in any event. For starters, the government does not deny that criminal statutes of limitations are interpreted in favor of repose, that there is a presumption against retroactive application of statutory amendments, and that neither statute of limitations at issue here—18 U.S.C. § 3283 nor 18 U.S.C. § 3299—specify their temporal reach as a matter of plain language or under traditional canons of statutory construction. (*Cf.* Op. Br. 48–51.)

That leaves only the question of whether applying a statute of limitations enacted after criminal conduct is completed produces an impermissible retroactive effect. On that point, the government directs the Court's attention to the Report and Recommendation of a magistrate judge, which appears to hold that statutes that extend unexpired statutes of limitations do not, as a categorical matter, "have an impermissibly

retroactive effect" in the criminal context. *Miller v. United States*, 2021 WL 311860, at *6 (D. Me. Jan. 29, 2021).

That view is just wrong. As one of the leading treatises on statutory construction explains, "an amendment to a statute of limitations usually operates prospectively absent any declaration that it is to operate retro-actively or a clear indication that the electorate or legislature intended otherwise." 3B Sutherland Statutory Construction § 72:3 (8th ed.). This default rule "is premised on the dual objectives to protect settled expec-tations and prevent abuses of legislative power," both of which apply with full force in the criminal context. *Id.*

More to the point, if extending an unexpired criminal limitations period could never produce an impermissibly retroactive effect, why would Congress routinely go out of its way to specify that a certain amendment to a limitations period applies retroactively? *See* Crime Con-trol Act of 1990, Pub L. No. 101-647, § 2505(b), 104 Stat. 4789, 4861 ("The amendments . . . shall apply to any offense committed before the date of the enactment of this section, if the statute of limitations applicable to that offense had not run as of such date."); Justice for All Act of 2004, Pub. L. No. 108-405, § 204, 118 Stat. 2260, 2271 (2004) ("The

amendments made by this section shall apply to the prosecution of any offense committed before, on, or after the date of the enactment of this section if the applicable limitation period has not yet expired.").

For the reasons laid out in the Opening Brief (at 51–52), moreover, applying the amendments to §§ 3283 or 3299 to Defendant's pre-enactment conduct produces an impermissible retroactive effect. "At the time Defendant committed his criminal acts, he had a statutory right which protected him from criminal prosecution five years from the date he committed said acts." *Gentile*, 235 F. Supp. 3d at 654–55; *see United States v. Lopez de Victoria*, 66 M.J. 67, 72–74 (C.A.A.F. 2008). To apply the amended limitations periods to his pre-enactment conduct, therefore, "would impair rights" he "possessed when he acted," "increase" his "liability for past conduct," and "impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.[2]

---

[2] The courts of appeals that have addressed the retroactivity of these statutes have based their analysis on the Ex Post Facto Clause rather than on principles of retroactivity. *See United States v. Sure Chief*, 438 F.3d 920, 924–25 (9th Cir. 2006) (upholding application of the amended limitations period to pre-enactment conduct because "there is no *ex post facto* problem here"); *United States v. Jeffries*, 405 F.3d 682, 685 (8th Cir. 2005) ("The law is well settled that extending a limitations period before prosecution is barred does not violate the ex post facto clause.").

## III.  THE JURY WAS MIS-INSTRUCTED ON DEFENDANT'S BURDEN.

According to the government (at 40–43), the district court did not err, let alone plainly err, in instructing the jury that Defendant bore the burden of proving his statute-of-limitations defense. The government advances no other argument on this point, thereby acknowledging that, if the district court erred and its error was plain, then the other two components of the plain-error analysis are satisfied: (1) Defendant's substantial rights were affected; and (2) the fairness, integrity, and public reputation of Defendant's trial were seriously undermined by the district court's error. (Op. Br. 57–59.)

Instructing the jury that Defendant bore the burden of establishing that the alleged kidnapping ceased early enough to be barred by the statute of limitations was an error, and that error was plain. The government does not try to distinguish the many cases standing for the proposition that once "a defendant presses a limitations defense, the Government then bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period." *Musacchio*, 136 S. Ct. at 718; *DeLia*, 906 F.3d at 1217. Instead, the government argues (at 42) that, under *Smith*, shifting

to the defendant the burden of proof on the defendant's affirmative defenses does not violate the Due Process Clause. But although *Smith* did not see any due process violation in requiring a defendant to prove that he had affirmatively withdrawn from an ongoing conspiracy, it also reaffirmed that "the Government must prove the time of the conspiracy offense if a statute-of-limitations defense is raised." 568 U.S. at 113.

The government insists (at 41) that the issue is not about whether the prosecution started within the applicable statute of limitations, but whether "the continuing offense of kidnapping ended at a date earlier enough" to support Defendant's statute-of-limitations defense. This is a distinction without a difference. As explained in the Opening Brief, a kidnapping terminates as soon as the victim is free to leave the kidnapper's presence. That event, which requires the defendant to do nothing beyond cease to forcibly restrain the victim's movement, triggers the beginning of the limitations period. *See United States v. Toledo*, 985 F.2d 1462, 1465-66 (10th Cir. 1993); *United States v. Garcia*, 854 F.2d 340, 344 (9th Cir. 1988). Here, Defendant pressed a statute-of-limitations defense by presenting evidence (Op. Br. 54–59) that Rosalynn was free to leave his presence long before she reported to the consulate in 2016. Having done

so, it became the government's burden to show that Rosalynn was held against her will during the limitations period. *United States v. Corrigan*, 548 F.2d 879, 882 (10th Cir. 1977).

The government says (at 43) that there's no reason to worry because the jury was told to address Defendant's defense only if it had already found him guilty under Count I. But that point only highlights the confusion the jury must have experienced. Was it the government's burden to prove that Rosalynn was continuously held against her will for 19 years? Or, after the government proved that Rosalynn was initially taken against her will, did it become Defendant's burden to show that she was at some point thereafter free to leave? The conflict between the two instructions created an unacceptable risk that the jury would believe that it was the Defendant's burden to prove that the kidnapping occurred outside of the limitations period instead of the government's burden to prove that it occurred inside the limitations period. Under this Court's cases, the jury's confusion on the burden of proof rendered the district court's "Duration of Kidnapping" instruction plainly erroneous. *See Corrigan*, 548 F.2d at 881 ("There are a number of cases emphasizing the

importance of avoiding confusion as to the burden of proof when an affirmative defense . . . is asserted.").

## IV.  THE DISTRICT COURT ERRED WHEN IT DENIED PIETTE THE RIGHT TO REPRESENT HIMSELF AT SENTENCING.

The district court improperly denied Defendant's request to represent himself at sentencing. The government's only response (at 45–46) is that Defendant's request was not "clear and unequivocal." To request self-representation clearly and unequivocally, however, does not require a defendant to "recite some talismanic formula hoping to open the eyes and ears of the court to his request." *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000). Nor is there any requirement that the request "be written or in the form of a formal motion." *Id.* All that's required is an affirmative, unequivocal request.

The required type of request is exactly what Defendant advanced in his letter and in his statements in open court. In his letter, Defendant expressly asked the district court "to terminate the services of said defendant's attorney." 1:399. He went on to ask, not that his attorney be replaced by a new one, but that his attorney "turn over all case materials" to the Defendant himself. *Id.* Defendant reiterated his request at sentencing.  2:1106:21–1107:2.  That  his  request  stemmed  from

"[d]issatisfaction with counsel," moreover, did "not make" his request "equivocal." *Freeman v. Pierce*, 878 F.3d 580, 588 (7th Cir. 2017). To the contrary, the combination of these communications made Defendant's request to represent himself "clear and unequivocal."

Because Defendant's request to represent himself was "clear and unequivocal," the district court violated Defendant's constitutional rights by failing to conduct the required colloquy under *Faretta v. California*, 422 U.S. 806 (1975). *See United States v. Loya-Rodriguez*, 672 F.3d 849, 859 (10th Cir. 2012).

## <u>CONCLUSION</u>

For these reasons, this Court should reverse the judgment of the district court.

PARSONS BEHLE & LATIMER

/s/ Alan S. Mouritsen

Alan S. Mouritsen
*Attorney for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I, Alan S. Mouritsen, hereby certify as follows:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the entire brief contains 4,659, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I relied on the word count function of Microsoft Word 2010 to ascertain this information.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, in 14-point font size and Century Schoolbook type style.

/s/ Alan S. Mouritsen
ALAN S. MOURITSEN

## <u>CERTIFICATE OF COMPLIANCE WITH GENERAL ORDER</u>
## <u>95-01</u>

I, Alan S. Mouritsen, hereby certify as follows:

1.      all privacy redactions have been made;

2.      the ECF submission of the **REPLY BRIEF** is an exact copy of the seven hard copies filed with the Court;

3.      the ECF submission of the foregoing **REPLY BRIEF** was scanned for viruses with the most recent version of Microsoft Forefront and, according to the program, is free of viruses.

/s/ Alan S. Mouritsen
ALAN S. MOURITSEN

*Attorney for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

In accordance with 10th Cir. R. 25.4, I, Alan S. Mouritsen, hereby certify that on April 6, 2021, I electronically served a copy of the **REPLY BRIEF** via ECF, which, in turn, accomplished electronic service on the following.

> Linda A. Epperley
> Sarah McAmis
> Office of the United States Attorney
> Eastern District of Oklahoma
> Tel: 918-684-5100
> 520 Denison Avenue
> Muskogee, OK 74401
> linda.epperley@usdoj.gov
> sarah.mcamis@usdoj.gov

/s/ Alan S. Mouritsen

ALAN S. MOURITSEN

*Attorney for Appellant*