UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

_____

NO.   20-7008

_____

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

vs.

HENRI PIETTE,

Defendant/Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
THE HONORABLE RONALD A. WHITE, UNITED STATES DISTRICT JUDGE
CASE NO. CR-17-79-RAW

_____

APPELLEE'S RESPONSE TO APPELLANT'S PETITION
FOR PANEL REHEARING OR REHEARING EN BANC

_____

CHRISTOPHER J. WILSON
United States Attorney

Linda A. Epperley, Okla. Bar No. 12057
Assistant United States Attorney

James R.W. Braun, N.M. Bar No. 8226
Special Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
(918) 684-5100
Attorneys for Appellee

October 11, 2022

1

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii-iii

Introductory Statement ......................................................................................................... 1

Relevant Background ........................................................................................................... 1

Argument and Authorities

I.   THE COURT SHOULD DENY PIETTE'S REQUEST FOR PANEL
     REHEARING ............................................................................................................. 5

II.  THE COURT SHOULD DENY PIETTE'S REQUEST FOR REHEARING EN
     BANC ........................................................................................................................ 9

Conclusion .......................................................................................................................... 12

Certificate of Word Count Compliance .............................................................................. 13

Certificate of Digital Submission ....................................................................................... 13

Certificate of ECF Filing & Delivery……………………………………….…………..13

## TABLE OF AUTHORITIES

**Cases**

*Calder v. Bull*,
3 Dall. 386 (1798).................................................................................. 6

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) ............................................................ 3, 6, 11, 12

*Lindsey v. Washington*,
301 U.S. 397 (1937) ............................................................................. 6

*Peugh v. United States*,
569 U.S. 530 (2013) ............................................................................. 6

*Toussie v. United States*,
397 U.S. 112 (1970) ............................................................................. 4

*United States v. Delano*,
981 F.3d 1136 (10th Cir. 2020) ........................................................ 11

*United States v. Gentile*,
235 F. Supp. 3d 649 (D. N.J. 2017)............................................. 11, 12

*United States v. Leo Sure Chief*,
438 F.3d 920 (9th Cir. 2006) ............................................................. 8

*United States v. Miller*,
911 F.3d 638 (1st Cir. 2018) ........................................................... 10

*United States v. Nader*,
425 F. Supp. 3d 619 (E.D. Va. 2019) ................................................. 4

*United States v. Richardson*,
512 F.2d 105 (3d Cir. 1975) ............................................................. 11

*United States v. Vann*,
___ F.3d ___, 2015 WL 221618 (10th Cir. 2015)............................... 1

*Weaver v. Graham*,
450 U.S. 24 (1981) ............................................................................. 6

*Weingarten v. United States*,
865 F.3d 48 (2d Cir. 2017) ................................................................................. 4


**Statutes**

18 U.S.C. § 1201(a)(1) ....................................................................................... 3

18 U.S.C. § 1201(g) ............................................................................................ 3

18 U.S.C. § 2243(a) ......................................................................................... 2, 7

18 U.S.C. § 2423(b) .................................................................................... 2, 3, 6, 7

18 U.S.C. § 3283 ...................................................................................... 2, 4, 5, 7, 8, 10

18 U.S.C. § 3299 ........................................................................................ 2, 4, 5, 7

18 U.S.C. § 3509(k) (1991) ................................................................................ 8

18 U.S.C. 3299 ................................................................................................... 8


**Other Authorities**

Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act
(PROTECT),117 Stat. 650, § 105 ...................................................................... 2

Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act
(PROTECT),117 Stat. 650, § 105(a) ................................................................... 5

Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act
(PROTECT), 117 Stat. 650, § 202 ................................................................... 2, 5

Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act),
120 Stat. 587, § 211 .................................................................................... 2, 5

Fed. R. App. P. 35(a) ................................................................................... 9, 10

H.R. Conf. Rep. No. 108-66, at 54 (2003) .......................................................... 9

## INTRODUCTORY STATEMENT

Defendant/Appellant Henri Piette was convicted after a jury trial in the Eastern District of Oklahoma of kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g), and traveling with intent to engage in sexual relations with a juvenile, in violation of 18 U.S.C. § 2423(b). On August 18, 2022, a unanimous panel of this Court (Judges McHugh, Ebel, and Eid) reversed Piette's kidnaping conviction and affirmed his § 2423(b) conviction. *United States v. Piette*, 45 F.4th 1142 (10th Cir. 2022).[1] The panel's decision affirming Piette's § 2423(b) conviction was correct. The Court should deny Piette's petition for panel rehearing or rehearing en banc.

## RELEVANT BACKGROUND

The facts of this case are thoroughly detailed in the panel opinion. Op. 3-9. Pertinent to the present motion for rehearing, Piette kidnapped twelve-year-old Rosalynn McGinnis in 1997. For the next two years, Piette moved McGinnis and his children around the country while "subjecting McGinnis to constant physical and sexual violence." Op. 6. At the age of fourteen, McGinnis became pregnant while living in Idaho. Consequently, "Piette moved the family to Mexico to avoid questions about her pregnancy[.]" Op. 6. McGinnis gave birth to that child, and subsequently to eight more of Piette's children.

---

[1] Citations to the panel opinion herein are to the slip opinion ("Op. __"), a copy of which is attached as Exhibit A to Piette's petition for rehearing.

1

McGinnis turned sixteen on May 14, 2000.[2]  At that time, the penalty for a violation of the travel-with-intent statute, 18 U.S.C. § 2423(b), was imprisonment for up to fifteen years.  Also at that time, the statute of limitations for charging a violation of § 2423(b) was until the child victim turned twenty-five.[3]

Prior to McGinnis's twenty-fifth birthday, however, Congress extended the statute of limitations for sexual offenses against minors.  In 2003, Congress passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act.  Among other things, the PROTECT Act amended § 3283 to extend the statute of limitations for offenses "involving the sexual or physical abuse, or kidnaping, of a child under the age of 18 years" to the life of the child.  117 Stat. 650, § 202.  In another section of the Act, Congress amended § 2423(b) to increase the maximum penalty to 30 years imprisonment.  *Id.* § 105.  Congress amended § 3283 again in 2006 to its current iteration: the life of the child or ten years after the offense, whichever is longer.

Later in 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act").  Section 211 of that Act eliminated the statute of limitations for most felony sex offenses involving minors, including §2423(b).  120 Stat. 587, § 211 (codified at 18 U.S.C. § 3299).

---

[2] The relevance of this fact is that the § 2423(b) violation covered Piette's sexual acts with McGinnis until she turned sixteen.  *See* Op. 27 (citing 18 U.S.C. § 2243(a)).

[3] Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, as recodified at 18 U.S.C. § 3283.

In 2016, McGinnis was able to extricate herself and her children from Piette's grasp and make her way to the American Consulate in Mexico. The federal indictment in this case was returned in 2017. The two-count indictment charged Piette in count 1 with kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g), and in count 2 with traveling with intent to engage in sexual relations with a juvenile, in violation of 18 U.S.C. § 2423(b).

Piette moved to dismiss the § 2423(b) charge, arguing that it "was untimely because any enactments purporting to extend the statute of limitations had an impermissible retroactive effect." Op. 11. The district court denied the motion, ruling "that because the original statute of limitations had not already expired when Congress acted, the legislature validly extended a live charging period, rendering Piette's 2017 indictment timely." *Id.*

Applying the two-part test outlined by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994), the panel affirmed the district court's ruling. The panel articulated the *Landgraf* test as follows:

> First, we ask whether Congress has expressly prescribed the proper reach of the statute. If so, we follow Congress's lead. If not, we proceed to the second step, asking whether applying the statute to the events at issue would have retroactive effects. The Supreme Court instructs that statutes are disfavored as retroactive when their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If we find retroactive effect, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Op. 28-29 (internal brackets, quotation marks, and citations omitted).

3

The panel concluded that neither § 3283 nor § 3299 contain an express indication of the statutes' temporal reach, Op. 29-31, and it therefore "proceed[ed] to *Landgraf*'s second step." Op. 31.

As to *Landgraf*'s second step, the panel recognized the "'vast weight of retroactivity decisions' [that] support a distinction between revoking a vested statute of limitations defense and extending a filing period for live claims." Op. 31 (quoting *Weingarten v. United States*, 865 F.3d 48, 57 (2d Cir. 2017). The panel acknowledged the Supreme Court's admonition "that statutes of limitations should be 'liberally interpreted in favor of repose.'" Op. 31 (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970). Nevertheless, it agreed with courts that have "conclud[ed] that 'the case law strongly supports the proposition that the distinction between applying a statute that extends or eliminates a statute of limitations period to claims that were expired at the time of its enactment, and applying it to claims that were unexpired at the time of its enactment, is applicable to both civil and criminal statutes of limitations.'" Op. 31-32 (quoting *United States v. Nader*, 425 F. Supp. 3d 619, 630 (E.D. Va. 2019)).

The panel noted, with regard to Piette, that the original statute of limitations had not yet expired when the 2003 PROTECT Act and 2006 Adam Walsh Act statutes of limitations were enacted. Op. 32. The panel continued:

> By extending the unexpired statute of limitations, Congress did not increase Piette's exposure to prosecution retroactively. It did not raise the penalty for the charged offense. It did not redefine the offense to make it easier to establish. It did not expose Piette to criminal prosecution anew. It merely altered the ongoing charging period for the conduct that had already exposed him to criminal prosecution. Piette was subject to indictment in

4

> 2002, before the statutes of limitations were extended, and he remained
> subject to indictment in 2007, once the changes were made.

Op. 32.  Accordingly, the panel held that "*Landgraf* is no basis for finding Piette's

traveling-with-intent charge untimely" and affirmed his conviction on that count.  Op. 33.

ARGUMENT

I.    THE COURT SHOULD DENY PIETTE'S REQUEST FOR PANEL
      REHEARING.

Piette's request for panel rehearing is based on a mischaracterization of the panel

opinion.  In his petition for rehearing, Piette asserts:  "In holding that applying the new

statutes of limitation to Mr. Piette's past conduct did not violate principles of

retroactivity, the panel mistakenly stated that Congress 'did not raise the penalty for the

charged offense.'"  Aplt. Pet. at 6.  Piette claims that this is a critical misstatement,

because—as noted above—Congress did change the penalty for the charged offense from

15 years to 30 years imprisonment in § 105(a) of the PROTECT Act.  But Piette ignores

the phrase preceding that sentence[4] which modifies what comes after and makes it clear

that the panel was referring to the two statutes of limitations that extended the charging

period for Piette's offense.  And it is an accurate statement that Congress did not increase

the penalty for the charged offense in either § 202 of the PROTECT Act (amending 18

U.S.C. § 3283) or § 211 of the Adam Walsh Act (creating 18 U.S.C. § 3299).  Any

potential ex post facto effect of applying § 105(a)'s increased statutory maximum to

---

[4] "*By extending the unexpired statute of limitations*, Congress did not …."  Op. 32.

5

Piette at sentencing[5] is an entirely separate question, and one that Piette never raised at any point in these proceedings.[6]

This reading of the panel opinion is consistent with *Landgraf* itself, in which the Supreme Court stated, "there is no special reason to think that all the diverse provisions of the Act must be treated uniformly for such purposes."  511 U.S. at 280.  So it is here, where the PROTECT Act also contains "diverse provisions."  The possibility that one part of the PROTECT Act—the provision increasing the maximum sentence of imprisonment for a violation of § 2423(b) to 30 years—implicated the Ex Post Facto Clause as applied to Piette does not change the panel's *Landgraf* analysis with regard to the extended statute of limitations created by an entirely different section of the PROTECT Act.  *Cf. Weaver v. Graham*, 450 U.S. 24, 36 n.22 (1981) (noting that that "only the ex post facto portion of the new law is void as to petitioner, and therefore any severable provisions which are not ex post facto may still be applied to him").

---

[5] *See Peugh v. United States*, 569 U.S. 530, 538 (2013) (an ex post facto law is one which, inter alia, "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed") (quoting *Calder v. Bull*, 3 Dall. 386, 390 (1798)).

[6] Indeed, Piette made it clear in his brief-in-chief that his statute of limitations argument was not made under the Constitution's Ex Post Facto Clause.  Aplt. Brf. at 47 n. 4.  In any event, the proper remedy to an ex post facto violation related to the sentence imposed would be to sentence Piette subject to the statutory maximum in effect at the time of the offense, if possible, not to shield him from prosecution altogether.  *See Peugh*, 569 U.S. 530 (sentencing guidelines); *cf. Lindsey v. Washington*, 301 U.S. 397, 402 (1937) (holding that petitioners were wrongly sentenced under a law that was enacted after commission of their offenses and noting that "[w]hether, in consequence of the invalidity of the later act, as applied to petitioners, they may be sentenced under the earlier, is a question for the state court").

Two other points support the soundness of the panel's conclusion.  First, as the panel opinion correctly noted, Piette's conduct was covered by two statutes of limitations, § 3283 *and* § 3299.  Section 3299 was created as part of the Adam Walsh Act, and Piette makes no claim that anything in that Act increased his sentencing exposure.  Thus, setting § 3283 aside, Piette's argument does nothing to undercut the panel opinion's analysis as to § 3299.

Second, comparing § 2423(b) with another statute covered by § 3283's statute of limitations, 18 U.S.C. § 2243(a) (sexual abuse of a minor), demonstrates why the panel opinion's *Landgraf* analysis was correct.  While Congress increased the maximum sentence of imprisonment for a violation of § 2423(b) in the PROTECT Act, the maximum penalty for § 2243(a) has remained unchanged.  So, by Piette's logic, violators of 18 U.S.C. § 2243(a) would be subject to the extended statutes of limitations while violators of the more serious § 2423(b) would not.  Such a result would be untenable.

But even if the panel opinion incorrectly concluded that application of the extended statutes of limitations here would not have an impermissible retroactive effect, that would not end the inquiry as Piette asserts.  Instead, the Court would still have to proceed to consider whether Congress clearly intended such retroactive application.  *See* Op. 33 (because of conclusion that the extended statutes of limitation do not have an impermissible retroactive effect, "we need not consider Congressional intent").  And if the Court engages in that inquiry, it would conclude that Congress intended exactly that.

A review of the evolution of the statutes covering child sex abuse violations clearly demonstrates Congress's intent and continual efforts to extend the time to bring

child sexual abuse prosecutions.  As referenced in the panel opinion, until 1990, child

sexual abuse crimes fell under the standard five-year statute of limitations for noncapital

felonies.  Op. 26-27; *see also United States v. Leo Sure Chief*, 438 F.3d 920, 922 (9th Cir.

2006) (discussing the evolution of statute of limitations for child abuse and exploitation

crimes).  Congress first enacted an extended limitations period for crimes involving the

sexual or physical abuse of a child in the Victims of Child Abuse Act of 1990.  Op. 27.

That statute of limitations, codified at 18 U.S.C. § 3509(k) (1991), extended the time to

bring child sexual abuse cases from the standard five years to the victim's twenty-fifth

birthday.  *Id.*  In 1994, the text of that statute was re-codified at 18 U.S.C. § 3283.  *Id.*  As

discussed above, in 2003, Congress amended § 3283 to again extend the statute of

limitations for offenses involving the sexual abuse of a child to the "life of the child."  In

2006, the statute of limitations was expanded yet again—to run for the life of the child or

for ten years after the offense, whichever is longer.  Op. 27.  And again in 2006, Congress

entirely eliminated the statute of limitations for child abduction and sex offenses.  *Id.*; 18

U.S.C. 3299.  Significantly, Congress has never shortened the charging period for child

sexual abuse offenses.

The Joint Report accompanying the 2003 PROTECT Act amendment to § 3283

reflects Congress's intent to create an expansive statute of limitations for these types of

offenses:

> While [the statute of limitations allowing for prosecution until the victim
> reaches age 25] is better than a flat five-year rule [under 18 U.S.C. § 3282],
> it remains inadequate in many cases.  For example, a person who abducted
> and raped a child could not be prosecuted beyond this extended limit—even

if DNA matching conclusively identified him as the perpetrator one day after the victim turned 25.

H.R. Conf. Rep. No. 108-66, at 54 (2003), reprinted in 2003 U.S.C.C.A.N 683, 688.

Congress's express purpose in 2003 was to prevent child abusers from escaping prosecution on a timing technicality. Congress contemplated that a lengthy investigation or other delays may make it impossible to prosecute a child sex crime by the child's twenty-fifth birthday. Congress amended the statute to account for such delay and permit adequate time to investigate a child sexual abuse claim and still timely file charges. Piette's case fits the mold described by Congress: McGinnis was first abducted and abused as a young girl; it took until her adulthood for that abuse to be fully brought to light and adequately investigated. Congress has clearly stated that such a lapse cannot provide defendants a technical escape from prosecution.

Congress extended § 3283's limitations period to the lifetime of the child when Piette was still subject to prosecution for his sexual abuse of McGinnis. Congress clearly intended that the 2003 amendment extend the time to bring that charge against defendants like Piette to the child victim's full lifetime.

## II. THE COURT SHOULD DENY PIETTE'S REQUEST FOR REHEARING EN BANC.

Petitions for rehearing en banc are governed by Rule 35 of the Federal Rules of Appellate Procedure. Rule 35 provides that "[a]n en banc hearing or rehearing is not favored and ordinarily will not be granted unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a

question of exceptional importance." Fed. R. App. P. 35(a). Neither of those reasons are present here.

Rather, Piette asserts that, "[a]s the first circuit to address the issue on the merits, it is especially important that the panel get it right." Aplt. Pet. at 10. But surely the panel was not under some misimpression that it was unimportant to reach the correct result. Piette has stated an insufficient justification for en banc review.

In any event, the panel did in fact "get it right." While this may have been a question of first impression in the Tenth Circuit, the panel was not writing on a blank slate. After thoroughly examining the relevant authority and applying the correct test, the panel issued a well-reasoned—and correct—opinion. Piette makes three arguments in support of his petition, none of which undermine the panel opinion or call for en banc review.

First, Piette argues that applying the amended § 3283 to him would have an impermissible retroactive effect. For the reasons stated above, *supra* 5-7, this is incorrect.

Second, Piette asserts that "the panel did not address how the criminal context affects the analysis." Aplt. Pet. at 11. Piette acknowledges, as he must, that the panel opinion *did* recognize that "the question's difficulty is compounded by the criminal context." Op. 31 (citing *United States v. Miller*, 911 F.3d 638, 645 (1st Cir. 2018). In Piette's view, though, the panel's analysis in this regard was deficient. According to him, "[o]ther courts have approached this issue differently." Aplt. Pet. at 11. But he cites only three cases in support of that assertion: a Third Circuit case that predates *Landgraf* by

10

nearly twenty years (*United States v. Richardson*, 512 F.2d 105 (3d Cir. 1975)), an

inapposite Tenth Circuit case (*United States v. Delano*, 981 F.3d 1136 (10th Cir. 2020)),

and a case out of the District of New Jersey that the panel opinion affirmatively rejected

(*United States v. Gentile*, 235 F. Supp. 3d 649 (D. N.J. 2017)).

In *Richardson*, the Third Circuit held that an extended statute of limitations for

draft offenses did not apply retroactively to the defendant's conduct because the statute

"was silent" on that question. *Richardson*, 512 F.2d at 106. In its half-page analysis of

the issue (far less analysis than contained in the panel opinion), the court did not grapple

with anything resembling the *Landgraf* test. That isn't surprising, given *Richardson* was

decided nearly twenty years before the Supreme Court issued its decision in *Landgraf*.

But it does render *Richardson* an anachronism.[7]

*Delano* has no relevance to the issue presented in this case because the Act at issue

there (the Mandatory Victims Restitution Act) expressly stated that it only applied

prospectively. *Delano*, 981 F.2d at 1139. The absence of any such clear statement in

either § 3283 or § 3299 is what rightly caused the panel to proceed to the second step of

the *Landgraf* test in its opinion. Op. 31.

---

[7] The absence of a *Landgraf* analysis is significant because *Richardson* turned on the
premise that "a law is presumed to operate prospectively in the absence of a clear
expression to the contrary." *Richardson*, 512 F.2d at 106. In *Landgraf*, however, the
Supreme Court resolved any tension between that axiom and the well-established rule
that "a court should apply the law in effect at the time it renders its decision, even though
that law was enacted after the events that gave rise to the suit." *Landgraf*, 511 U.S. at
273 (internal quotation marks and citation omitted). The result was the two-part
*Landgraf* test that the panel correctly applied here.

*Gentile*, a district court decision, was fully addressed by the panel in its opinion. Op. 31-32.  The panel's considered rejection of that court's analysis should not give rise to en banc review.

Piette's third, and final, argument is that "the panel gave insufficient attention to the longstanding presumption against retroactivity."  Aplt. Pet. at 12.  But as discussed above, *supra* at n. 6, the *Landgraf* test itself encompasses that presumption.  By applying the *Landgraf* test, the panel necessarily paid the requisite attention to the presumption against retroactivity.

In sum, the panel applied the controlling Supreme Court authority, *United States v. Landgraf*, and reached the correct result.  The panel opinion neither conflicts with a decision of the Supreme Court or of this Court, nor involves an issue of exceptional importance.  Accordingly, there is no need for en banc review of the panel's decision.

<u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Piette's petition for panel rehearing or rehearing en banc.

Respectfully submitted,

Christopher J. Wilson
United States Attorney

*/s/Linda A. Epperley*
Linda A. Epperley, Okla. Bar No. 12057
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone (918) 684-5156
Facsimile: (918) 684-5150
linda.epperley@usdoj.gov

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). According to MS Word 2016, this brief contains 3,330 words, excluding those parts of the brief exempted by Fed. R. App. P. 32.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

*/s/Linda A. Epperley*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

I certify that:

- all required privacy redactions have been made;

- that with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk; and

- that the ECF submission was scanned for viruses using McAfee Endpoint Security version 10.5, updated continuously, and according to the program is free of viruses.

*/s/Linda A. Epperley*

## <u>CERTIFICATE OF ECF FILING AND DELIVERY</u>

I hereby certify that this document was filed via the Tenth Circuit's CM/ECF System and was sent via the CM/ECF System on October 11, 2022, to counsel for Appellant:

Alan Mouritsen            AMouritsen@parsonsbehle.com

*/s/Linda A. Epperley*